FLEEGAR *v.* CONSUMERS POWER CO.

1. WITNESSES—EVIDENCE—OPPOSITE    PARTY—IMPEACHMENT—STAT-
UTES.
   Under statute, employee of opposite party may be called and
      cross-examined without party calling him being bound by his
      answers, or prevented from impeaching him (3 Comp. Laws
      1929, § 14220).

2. EVIDENCE—OPPOSITE PARTY—WEIGHT OF EVIDENCE—WITNESSES—
STATUTES.
   Testimony of witness called by opposite party under statute
      must be weighed and considered same as that of any other
      witness (3 Comp. Laws 1929, § 14220).

3. SAME—SUCH TESTIMONY BINDING IF NOT CONTRADICTED.
   Party calling as witness employee of opposite party is at liberty
      to contradict him, but is bound by his testimony except so far
      as it is contradicted (3 Comp. Laws 1929, § 14220).

4. GAS—EXPLOSIVES—DEGREE OF CARE REQUIRED—NEGLIGENCE.
   Since gas company is dealing with highly dangerous substance,
      it is bound to use degree of care commensurate with danger
      of its gas escaping and causing injury or damage to person
      or property of others.

5. SAME—CUSTOMER MAY USE GAS AS HE SEES FIT.
   Ordinarily, when gas is measured and delivered to customer, he
      may use it for such purposes as he sees fit.

6. SAME—CUSTOMER MUST KEEP OWN GAS PIPES IN REPAIR.
   Ordinarily, gas pipes and conduits in customer's building belong
      to him, are under his control, and it is his duty to keep them
      in repair.

7. SAME—COMPANY NOT LIABLE FOR CUSTOMER'S DEFECTIVE PIPES.
   Ordinarily, gas company which does not install pipes in cus-
      tomer's building has no control over them and is not respon-
      sible for their condition, maintenance, or defective installa-
      tion, nor for injuries caused by gas escaping from leak there-
      in, of which it has no knowledge.

8. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
    Person injured by escaping gas by reason of his own contributory negligence may not recover against gas company.

9. NEGLIGENCE—NOT PRESUMED.
    Negligence may not be presumed, but must be affirmatively proved.

10. GAS—NEGLIGENCE—ESCAPING GAS—EVIDENCE—SUFFICIENCY.
    In action by customer against gas company for injuries alleged to have been caused by escaping gas in plaintiff's house, defendant's negligence *held*, not established by preponderance of evidence.

Appeal from Genesee; Parker (James S.), J. Submitted January 19, 1933. (Docket No. 127, Calendar No. 36,978.) Decided April 4, 1933.

Case by Mabel E. Fleegar against Consumers Power Company, a corporation, for personal injuries alleged to have been caused by defendant's negligence. Judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

*Doran & Pearson,* for plaintiff.
*Carton & Gault,* for defendant.

POTTER, J. Plaintiff sued defendant to recover damages in the sum of $25,000 for defendant's negligence in carelessly and wilfully performing its work in making gas connections to paintiff's house, in this, that it sent an unskilled and incompetent workman to make the connection and turn on the gas; sent a man who failed to carefully perform the work, in that he failed to use reasonable precaution to ascertain whether the pipes and equipment used in conjunction with the gas on the premises were in proper condition to be used without injury to plaintiff; failed to keep the gas pipes used to supply gas

to plaintiff's house in reasonable and proper repair, and did not use that degree of care commensurate to the danger of escaping gas which it was its duty to avoid. Plaintiff alleges she was injured by being overcome or asphyxiated by escaping gas, became extremely nervous and run down, her heart was affected, she has frequent sinking or fainting spells, her eyesight has been seriously impaired, she has severe and painful headaches, and was compelled to be away from her business a great deal, causing irreparable loss of business, and has incurred expenses for nurses, doctors, and medicines.

Defendant denies due care on the part of plaintiff; admits it was requested to turn on gas at her premises, and did so; denies all negligence charged; denies plaintiff was injured by its negligent acts; alleges if she was injured it was not in any way due to defendant's negligence nor to escaping gas from defendant's pipes. The case was tried before the court without a jury. The trial court found the testimony showed by a preponderance there were leaky gas-jets on the second floor of plaintiff's house, and those leaky gas-jets furnished the gas which overcame plaintiff. This finding, if sustained at all by the declaration, must be by paragraph nine, which alleges defendant herein and its agent failed to ascertain and to use reasonable precaution to ascertain whether or not the pipes and equipment used in conjunction with the gas on the premises in question were in such condition that gas would flow into the same or through the same without injury to the person or persons occupying the premises. There was judgment for plaintiff for $6,879.50. A motion for a new trial was made on behalf of defendant, on the ground the findings of the trial court were against the great weight of the evidence, against the pre-

ponderance of the evidence, and the judgment was excessive. This motion was granted, unless plaintiff filed a remittitur within 10 days, which she elected to do, and the judgment stood at $5,879.50 and costs, from which judgment defendant appeals.

Appellant claims the judgment entered is erroneous, in that the court's findings were against the preponderance of the evidence, because plaintiff was guilty of negligence which was the proximate cause of her injury and of contributory negligence, and that the judgment, as entered, was excessive. Appellee accepts appellant's statement of the questions involved, but insists the judgment of the trial court be affirmed.

Plaintiff called Clayton Gahring, an employee of defendant, as a witness, under the statute, and he was fully examined as to what he did in turning on the gas at the premises. The statute, 3 Comp. Laws 1929, § 14220, provides:

"Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

Under the law as it existed prior to the enactment of this statute, one who placed a witness on the stand vouched for his credibility, was bound by his

answers, and barred from impeaching him. Under this statute, an employee of the opposite party may be called and cross-examined without the party calling him being bound by his answers, or prevented from impeaching him; but Gahring was a witness for the plaintiff, not for defendant (*Jones* v. *Railroad Co.,* 168 Mich. 1); and his testimony, being in the case, must be weighed and considered the same as that of any other witness (*City of Kalamazoo* v. *Standard Paper Co.,* 182 Mich. 476); and though plaintiff was at liberty to contradict his testimony (*Cook* v. *Railroad Co.,* 189 Mich. 456), she was bound thereby (*Aphoresmenos* v. *McIntosh,* 189 Mich. 680), except so far as such testimony was contradicted (*Swank* v. *Croff,* 245 Mich. 657).

Gahring testified to facts showing he complied with the rule established by the Michigan public utilities commission in testing the piping and appliances of defendant company; that he went further, and, after he turned on the meter, went through the house to see whether or not any of the gas jets were open, but none of them were open and the gas-pipe in the kitchen was capped. No one directly disputes this testimony. Plaintiff relies, to recover, upon the testimony of plaintiff, who testified she was familiar with the odor of illuminating gas and it was illuminating gas that overcame her; of Lillian Edgar, who said she was acquainted with the odor of illuminating gas, and the gas which overcame plaintiff smelled like illuminating gas, though she would not swear it was; Arthur Edgar, who was in the house afterward, who said he could detect the odor of illuminating gas; of Evelyn Lang, who cared for plaintiff after she was removed from the house to her home, and who said she was familiar with the odor of illuminating gas, could smell the odor on plaintiff's

·breath as clearly as she could detect the odor of illuminating gas when standing over a gas stove with the gas turned on; of Peter Archambault, who removed plaintiff from the house, who said he was familiar with the odor of illuminating gas, and it was illuminating gas he smelled in the house; of Dr. Brasie, who said if one is overcome by illuminating gas, the odor may be detected on the breath; and this testimony, it is claimed, shows plaintiff was overcome by illuminating gas; that the gas escaped and was in the house, and the fact that it was there indicates it came there by reason of defendant's failure to inspect the pipes, openings, jets, and appliances in the house at the time it caused the gas to be turned on.

Defendant claims it complied with the rule established in this State through the Michigan public utilities commission, and hence is not liable. It claims it did more. It contends plaintiff and her companion were not overcome by illuminating gas from defendant's pipes, but by a super-heated hot air furnace, which had been lighted after it had been standing unused for some time in a cold house, the smoke·flues of which were partially filled with soot, the furnace having been fired with coke, and to sustain this claim it contends the odor of illuminating gas is well understood and easily detected; that neither plaintiff nor her coworker, on the day in question, which was a cold, bright, winter day, when they entered the house from outdoors, discovered or recognized any odor of illuminating gas; that they went upstairs and began to work, and later detected an odor which "smelled like dust in the beginning." "It smelled like gas or a sort of dust smell. It penetrated my lungs, I knew that it was something on fire. * * *

I * * * first thought there might be something in the attic afire. * * * It might be smoke burning, you know, some place in the vicinity, in the attic." Mrs. Edgar, who was with plaintiff, says, "We thought it was dust * * * or something. * * * I could smell a funny odor." Mrs. Edgar says she was familiar with the smell of illuminating gas, and would not swear the odor was that of such gas. Defendant also relies upon the testimony of plaintiff's witness Gahring, defendant's employee, who testified that when he turned on the gas he not only complied with the rule established by the Michigan public utilities commission, but inspected the premises for gas openings and found them closed; and the testimony of Joseph C. Nichols, general foreman of the distributing department of defendant's gas works in Flint who, after the accident, as first aid man of defendant, went to plaintiff's home, and, after the doctor came, went to Mrs. Edgar's house, and from there to the scene of the accident, who says he detected no odor of illuminating gas in the house; that he searched all rooms, smelling, trying to detect some odor of gas, but he could not smell anything; and who says there was no odor of illuminating gas therein. He testified the gas pipe which came into the kitchen, which Archambault says was open, was closed, and which pipe Gahring, Davison, and Dr. Jefferson, as well as Nichols, say was closed; that on opening the furnace in the basement he could smell fumes, but not of illuminating gas; the testimony of Floyd Davison, shop foreman of defendant, who also visited the house in question and examined and tested the gas pipes, but discovered no defects therein, but did detect fumes from the furnace but not the odor of illuminating gas; of Dr.

Jefferson, who went to the house in the afternoon of the injury, examined the furnace, found the flues partially filled with soot, went through the rooms in the house, searched for gas leaks but could find none, and who concluded plaintiff's gassing was the result of carbon monoxide gas from the furnace; and it claims plaintiff's injury did not come from illuminating gas but from gas generated by the furnace; that even if illuminating gas escaped, it performed all and more than all its duty of inspection when the gas was turned on, and was not negligent. That if illuminating gas was escaping and present in the building when plaintiff and Mrs. Edgar entered it from the outside they should and would have detected its odor and presence, and if present in sufficient quantities to overcome plaintiff and her companion, they were guilty of contributory negligence in remaining in the house until they were overcome thereby, and under any circumstances, plaintiff is not entitled to recover; and in addition it claims that the amount of recovery was excessive.

A gas company, since it is dealing with a highly dangerous substance, is bound to use a degree of care commensurate with the danger of its gas escaping and causing injury or damage to the person or property of others. 29 A. L. R. 1250.

Defendant gas company, to ascertain the amount of gas delivered for which it is entitled to pay, installed a meter which belonged to it to measure such gas. When gas is measured and delivered to a customer, he ordinarily may use it for such purposes as he sees fit. The piping and conduits which he uses belong to him and are ordinarily under his control, and it is his duty to keep them in repair. Ordinarily, a gas company which does not install pipes in

the customers' building has no control over them and is not responsible for their condition, maintenance, or defective installation, nor for injuries caused by gas escaping from a leak therein, of which it has no knowledge. 25 A. L. R. 272. As in other negligence cases, if a person is injured by escaping gas by reason of his own contributory negligence, he cannot recover against the company. 25 A. L. R. 274. These principles are the bases of the rule promulgated by the Michigan public utilities commission, which provides:

"No utility shall establish gas service to any applicant until such utility has made a test of all supply piping and gas appliances by observing the meter when all appliances are shut off and gas pressure is on such piping and appliances, and finds that no gas passes the meter under such conditions. * * * Nothing in this rule shall be construed to make the utility liable for the installation, maintenance, or use of piping or appliances owned by the consumer beyond the making of the test above required, nor shall the utility be held liable for any continuing duty of inspection of piping or appliances."

There is no testimony to show, and no claim, any of the gas lines of defendant outside the house or between the meter in the basement and the main were defective, nor that illuminating gas escaped therefrom and penetrated plaintiff's house. It is clear if such gas was in the house it escaped, as found by the trial court, from the gas pipe or fixtures in the house.

If defendant was negligent, it must have failed to observe, for the protection of the interests of plaintiff, that degree of care, caution, and vigilance

which the circumstances justly demanded. *Brown* v. *Railway Co.,* 49 Mich. 153 (4 Am. Neg. Cas. 32). Negligence cannot be presumed, but must be affirmatively proved. *G. R. & I. R. Co.* v. *Judson,* 34 Mich. 506; *G. R. & I. R. Co.* v. *Huntley,* 38 Mich. 537 (31 Am. Rep. 321); *Brown* v. *Railway Co., supra.*

Did plaintiff establish negligence? She did not rest her case upon inferences which might be drawn from the claimed presence of illuminating gas in the house. She went further and affirmatively proved and established by her witness Gahring, who was not impeached except by Archambault, and who was corroborated by several other credible witnesses, not only that defendant complied with the rule established by the Michigan public utilities commission as to meter test but that it made an inspection of the piping and fixtures inside the house and found them closed. In view of plaintiff's showing by this witness whose testimony is not impeached, we cannot find plaintiff has established by a preponderance of evidence defendant was negligent.

Judgment reversed, with costs. New trial granted.

McDonald, C. J., and Clark, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.