MURRAY v. NEW YORK CENTRAL RAILROAD COMPANY.

1. CARRIERS—PRIMA FACIE CASE OF NEGLIGENCE.
    A prima facie case of negligence on the part of the carrier is made out by a shipper who shows delivery of the shipment to the carrier in good condition and delivery to the consignee in bad condition.

2. SAME — NEGLIGENCE — PRESUMPTIONS — ALLEGATION OF SPECIFIC ACTS OF NEGLIGENCE.
    Presumption of negligence of carrier arising from proof of delivery of shipment to carrier in good condition and delivery thereof to consignee in bad condition may not be indulged, where shipper alleges specific acts of negligence, since he then has the burden of proof of such specific acts.

3. SAME—NEGLIGENCE—PRESUMPTIONS—PLEADING.
    Shipper's allegation that carrier failed to properly ice carload of beef destroyed any presumption of negligence in shipper's favor arising from proof that beef was delivered to carrier in good condition and of its poor condition at point and time of redelivery.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 9 Am Jur, Carriers § 844.
[4] 58 Am Jur, Witnesses § 792.

4. WITNESSES—CREDIBILITY—TESTIMONY.

   A party to a civil action who places a witness on the stand not only vouches for the credibility of the witness but is bound by his answers.

5. CARRIERS—NEGLIGENCE—EVIDENCE—REFRIGERATOR CAR OF BEEF—REICING.

   Testimony that showed no more spoilage of refrigerated carload of beef than was usually experienced in such shipments was not, as a matter of law, sufficient proof of negligence of carrier due to alleged failure to reice car as needed.

6. SAME—NEGLIGENCE—EVIDENCE—REICING OF REFRIGERATOR CAR OF BEEF—RECORDING OUTSIDE TEMPERATURES.

   Failure of carrier to take and record outside temperatures on reicing record of refrigerator car loaded with beef shipped by plaintiff was too remote to prove failure to reice to capacity as required under shipper's instructions, since it was not necessarily evidence of failure to carry out the shipper's instructions.

REID, J., dissenting.

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 3, 1951. (Docket No. 23, Calendar No. 45,024.) Decided January 7, 1952.

Action by Paul H. Murray, doing business as Murray Packing Company, against New York Central Railroad Company for damages for meat spoilage. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Howard & Howard,* for plaintiff.

*George H. Wyatt* and *Leo W. Hoffman* (*John J. Danhof,* of counsel), for defendant.

REID, J. (*dissenting*). Plaintiff appeals from judgment of the circuit court for defendant notwithstanding jury's verdict in favor of plaintiff for $3,284.06.

On May 8, 1948, the defendant iced a refrigeration car at Niles, Michigan, and later placed the car for

service to the plaintiff at Plainwell, Michigan, at which point plaintiff on May 13th shipped prepaid the car loaded with dressed beef to himself at 33d Street Yards, New York, subject to delivery to Mid-Hudson Packing Company of Brooklyn, New York, with instructions to notify Mid-Hudson Packing Company, 159 Ft. Greene Place, Brooklyn, New York, to whom plaintiff had sold the beef at 43½ cents a pound. Plaintiff claims the beef on May 25th had to be resold by him at the rate of 30 cents a pound and that his total loss was the amount for which the jury rendered its verdict in his favor. Plaintiff in his declaration alleges defendant was negligent as follows:

"(a) Delayed said goods in transit;

"(b) Failed to provide proper refrigeration while said goods were in transit;

"(c) That it received and held said goods in its possession, and that it did not properly refrigerate said goods while so held in its possession;

"(d) Failed to notify plaintiff promptly and properly of its inability to deliver said goods within a reasonable time."

The court in its opinion says, "Nowhere in the record is there any evidence of delay and the plaintiff abandoned any claim in this respect."

Defendant offered in evidence tariff rule 4, item 515, § E 2 (a), which provides as follows:

"When perishable carload freight has not been disposed of by this railroad and remains on hand undelivered at the expiration of 3 days * * * from the first 7 a.m. after notice of arrival has been sent or given to the consignee or party entitled to receive the same, a notice to that effect shall, within 24 hours thereafter, be sent by wire to the consignor or owner when known."

The court received the demurrage tariff rule in question in evidence and ruled that this tariff demur-

rage rule disposed of any claim that plaintiff alleged for failure to promptly and properly notify plaintiff of inability of defendant to deliver, as plaintiff acknowledged that he received a wire on the morning of the 22d, which was sent on the afternoon of the 21st, which later time was within 24 hours after 3 days from the first 7 a.m. after notice to the consignee. The court further ruled:

"Defendant's duty in this respect was no broader or greater than the contents of the above-quoted tariff."

The tariff hereinbefore noted in nowise tended to lessen the duty of defendant to care for and protect the shipment during the period covered by the notice prescribed in the tariff.

After disposing of paragraphs (a) and (d) before mentioned, the court still had under consideration allegations in plaintiff's declaration as to negligence set forth in (b) and (c).

It is the claim of plaintiff that the beef was placed in defendant's car in good condition but that the car was not properly iced while under the care and in the charge of defendant and that the beef was in a damaged condition when finally delivered back to plaintiff for disposition at the point of delivery at 33d Street Yards, New York City, and that this situation creates proof of negligence of defendant as a common carrier and establishes a case for the jury to consider.

Defendant claims that the defendant iced the car at Niles on May 8th, that the car was loaded at Plainwell on May 13th, and that there is no showing that the car on plaintiff's examination of it and finishing the loading of the car at Plainwell, was at that time on May 13th in anywise deficient in its supply of ice nor that defendant was required by plaintiff to ice the car before its next point for icing,

which was at Windsor, where it was iced on May 14th, and defendant argues that therefore the icing or nonicing of the beef was a matter within the control of the plaintiff until the arrival of the refrigeration car at Windsor on May 14th, where defendant claims it iced the car. Defendant claims that any spoilage due to insufficient icing must have occurred during the period, May 8th to May 14th, while the car was in plaintiff's control. However, there is sufficient testimony to show that the shipment was in good condition when it was turned over to defendant on May 13th, and that it was defendant's duty to care for the shipment beginning on May 13th.

The defendant's icing and salting record for the car in question is as follows:

"Icing Record of Car Merx 120 May, 1948

| | Service Performed | | Vent Record Open or Closed Arrival and While | | Empty Space in Bunk- | Icing Record | Amt. Salt | Out- side |
|---|---|---|---|---|---|---|---|---|
| | Date | Hour | Held | Dept. | ers | Amt. Added | Added | Temp. |
| Niles, Mich. | 5– 8–48 | 11:30 a.m. | | C | | 11400 | 1710 | 54° |
| Windsor, Ont. | 5–14–18 | 10:31 p.m. | C | C | | 5800 | 870 | 51° |
| Susp. B. N.Y. | 5–15–48 | 1:10 p.m. | C | C | | 1200 | 180 | 65° |
| Selkirk, N.Y. | 5–16–48 | 2:19 p.m. | C | C | | 1600 | 240 | 52° |
| 33d St. | 5–18–48 | 12:45 p.m. | C | | | 1200 | 180 | |
| 33d St. | 5–21–48 | 9:35 a.m | C | | | 1500 | 225 | |
| 33d St. | 5–23–48 | 3:10 p.m. | C | | | 1500 | 225 | |
| 33d St. | 5–24–45 | 1:50 p.m. | C | | | 1500 | 225 | |
| 33d St. | 5–25–48 | 1:15 p.m. | C | | | 1200 | 180 | " |

Plaintiff argues that the lack of notation of outside temperature in New York City on May 18th, 21st, 23d, 24th and 25th, is an indication that the employees of defendant were negligent during the period from May 18th to May 25th about icing and that during that period no actual sufficient icing occurred and that during that period the deterioration of the meat occurred, and claims a question of fact arises by which the jury could and did find that the icing was insufficient, and that defendant, being in that respect negligent, caused the loss to plaintiff of the amount which is reflected in the jury's verdict.

The court in effect ruled that because there was no

witness who by personal knowledge directly contradicts the defendant's showing as to icing after the car arrived in Windsor, that all showing as to negligence in icing the car is to be disregarded, as a presumption overcome by direct proof.

No 14, ICC 25, supplement 34, rule 406 (so far as applicable to the instant case) is as follows:

"Reicing shipments at hold points and destination: charge for. When shipment, except when billed—'Do not reice,' is held at any intermediate point between point of origin and final destination on orders of or awaiting reconsigning or other instructions for shipper, owner or consignee, or after arrival in the terminal train yard serving the destination and up to the time it is in process of unloading on team tracks or until placed on private track, carrier will examine bunkers or tanks daily and unless written instructions [in writing] from shipper, owner or consignee are received to the contrary *when car requires additional ice or ice and salt* during such period it will be reiced. Before reicing car at destination, carrier will make reasonable effort to secure from consignee instructions as to whether or not reicing is desired. The charge for ice or ice and salt supplied will be in accordance with charges in this section." (Italics supplied.)

Defendant cites and relies upon *Atlantic Coast Line R. Co.* v. *Georgia Power Co.* (CCA), 164 F2d 1. The defendant in that case undertook to prove and incontrovertibly showed more than full compliance with the plaintiff's instructions, whereas in the case at bar there is an entire absence of testimony that the shown icing was sufficient.

We consider that the testimony that the meat was in good condition when turned over to the defendant on May 13th together with showing of assumption by defendant of duty to reice when the car requires additional icing in terminal yard and also further that

the bill of lading contained the following, "Car initially iced to capacity with 15% salt. Reiced to capacity salt 15% at all regular icing stations. Oftener if delayed," and also, the testimony that properly iced, the shipment would remain in good condition from May 13th to May 25th, and that in fact there was spoilage discovered on May 25th, taken together constitute a showing of negligence sufficient for the jury to find a verdict for plaintiff, notwithstanding the received record of icing, and notwithstanding that the defendant is not an insurer and is only liable for negligence. In addition, the jury could consider that the fact that there was no record of outside temperatures in defendant's record of icing during the period May 18th–May 25th, while the car stood at 33d street, New York (though outside temperatures evidently control the amount of icing necessary), together with the failure to ice for approximately 3 consecutive days and a total of 4 days, was evidence of defendant's negligence, in view of the proof of spoilage of the shipment during the time the shipment was in defendant's hands and in view of testimony that the meat would not spoil in the indicated period if sufficient icing had been furnished.

Other questions raised need not be determined in view of our decision above indicated.

The judgment appealed from should be reversed. The case should be remanded to the trial court with instructions to render judgment for plaintiff on the verdict for $3,284.06 with interest. Costs to plaintiff.

BUSHNELL, J. As I understand the opinion proposed by Mr. Justice REID, he holds that the proof of negligence of the defendant is supported by testimony that the meat was in good condition when it was turned over to the carrier, which then had the

duty to care for the shipment and keep the refrigerator car properly iced. The fact is emphasized that the carrier's icing record indicates lack of ordinary care, because it does not show the outside temperatures while the car was at 33d street in New York City from May 18th to 25th. It is stated that "outside temperatures evidently control the amount of icing necessary." Mr. Justice REID concludes that this, together with the failure to add ice on certain days, is evidence of negligence in view of the spoilage of the shipment during the time it was in defendant's hands.

If the meat was in good condition when it was turned over to the carrier, with proper icing instructions, but was partially spoiled when delivered, is this proof of negligence?

In *Chesapeake & Ohio R. Co.* v. *Thompson Manfg. Co.*, 270 US 416, 423 (46 S Ct 318, 70 L ed 659), the court said:

"When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that such evidence makes out a prima facie case of negligence."

This presumption of negligence, however, cannot be indulged in where the shipper alleges specific acts of negligence, because in such event the burden of proof is upon the shipper. See *Wentworth Fruit Growers Ass'n* v. *American Railway Express Co.*, 222 Mo App 1189 (1 SW2d 1028); also, authorities annotated in 106 ALR 1166 and 9 Am Jur, p 947.

Murray alleged that the New York Central was negligent in failing to ice the car properly. This specific allegation destroys any presumption in his favor.

Murray's testimony is summarized as follows:

"Assuming this particular refrigerator car, No MERX, was precooled and furnished to us for loading by the railroad, and we loaded it with dressed beef, Government inspected in good condition, sold and saleable in New York at 43½ cents lb., with instructions to ice the car to capacity at every icing station, adding 15% salt, and to ice it oftener if delayed, and assuming that such practice or instructions were followed by the railroad, I have an opinion as to whether the meat would arrive and remain in good condition from the 13th to the 25th of May  *  *  *  I think the meat should arrive in good condition. I think it should have been in good condition on the 25th or the 26th of May."

One Romanoff, an officer and buyer of the Sioux City Packing Company, testified that he purchased the car of meat after an inspection. On direct examination he was asked:

"From your experience, just by your examination of the bill of lading and noting the date of shipping, that it was shipped on the 13th day of May, 1948, and you had purchased it on the 25th day of May, 1948, that you would know, from your own experience, that the meat contained in that car, as you stated before, spoiled, that the neck part had become sticky and that certain parts would have to be cut away and thrown away as waste?"

He answered "Yes".

On cross-examination he answered questions as follows:

"Q. As I understood your answer to your attorney, by an examination of the face of the bill of lading, you could tell that the meat left in the car from May 13th to May 25th, even when refrigerated, would be sticky around the neck, would have to be trimmed, that it would lose its blood, and that the value of the

meat would be depreciated as much as you cut the price?

"*A.* Yes. * * *

"*Q.* Meat, even under refrigeration, cannot be kept in its original state for 13 days, can it?

"*A.* No."

Murray, in placing Romanoff on the stand, not only vouched for his credibility, but was bound by his answers. *Fleegar* v. *Consumers Power Co.,* 262 Mich 537, 540.

Murray assumed that usual refrigerator car practice and compliance with his shipping instructions would result in the carload of meat arriving at New York in "good condition." This does not imply "perfect condition" because it is admitted that there is always some natural deterioration.

Romanoff talked about "off condition," natural deterioration, and some spoilage requiring trimming to make the remainder salable to the public. He stated that the meat was fit for resale; that even when refrigerated, it "would be sticky around the neck," and that meat, even under refrigeration, cannot be kept in its original state for 13 days.

This testimony shows no more than the undisputed fact that, with ordinary refrigeration practice, there will, nevertheless, be some spoilage as a result of the operations of the processes of nature. There is no evidence in this record that the deterioration here was more than that usually experienced in like shipments.

No witness has shown any negligence on the part of the carrier. Without such proof, there was no question of fact to be determined by the jury.

My Brother Reid finds the proof of negligence in the icing record. But there is no evidence in the record that failure to reice for 3 consecutive days would cause any damage to the meat other than the usual deterioration encountered in shipments of

like nature. In fact, Murray's superintendent, Root, testified that the car was properly iced when it was loaded at Plainwell, Michigan on May 13th, although it had not been reiced for 5 days after it left Niles, Michigan, on May 8th.

The icing instructions given by Murray read in part: "Reice to capacity." The taking and recording of the outside temperatures at 33d street, New York, between May 18th and 25th, were not necessary to determine the amount of ice to be added in order to reice the car to capacity. And this is all that the instructions required.

The incomplete icing record indicates, at best, that the carrier was negligent in recording the outside temperatures. This may have some probative value, but it is too remote to prove failure to reice to capacity. Evidence of negligence in this respect is not necessarily evidence of negligence in carrying out the shipper's instructions.

The judgment entered, notwithstanding the jury's verdict, is affirmed. Costs to appellee.

Dethmers, Carr, and Sharpe, JJ., concurred with Bushnell, J.

North, C. J., and Boyles, J., concurred in affirmance. Butzel, J., did not sit.