MARILYN Kelly, J.
(dissenting). This interlocutory appeal presents a narrow question. It is whether the two defendants who installed plaintiff Marcy Hill’s electric washer and dryer owed plaintiffs a legal duty in tort with respect to plaintiffs’ uncapped gas pipe. It is not about what duties were owed to plaintiffs by the *673 former owners of the house. It is not about what duties were owed by the party who detached and removed the gas dryer. It is not about whether any of those parties or any defendant in this case ultimately should be held liable for the gas explosion that destroyed plaintiffs’ home.
The majority concludes that the installers, defendants Mark Pritchard and Timothy Dameron, owed no duty in tort to plaintiffs related to the gas pipe. It further concludes that the installation of the dryer did not create a new hazard or make an existing dangerous condition more hazardous. It finds that all defendants are entitled to summary disposition of all of plaintiffs’ claims. I disagree with these conclusions. As a consequence, I respectfully dissent.
DEFENDANTS OWED PLAINTIFFS A LEGAL DUTY TO WARN
It is axiomatic that there can be no liability in tort unless the defendant owes a duty to the plaintiff.[1] In assessing this issue, we examine whether an actor has a legal obligation “to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.”[2] “ ‘In other words, “duty” is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same — to conform to the legal standard of reasonable conduct in the light of the apparent risk.’ ”[3]
We consider several criteria when evaluating whether a duty exists, including (1) the relationship of *674 the parties, (2) the foreseeability of harm, (3) the burden on the defendant, and (4) the nature of the risk presented.[4] Applying these criteria, I would hold that when they concealed the uncapped gas pipe, the installers owed plaintiffs a duty to warn them of the potential hazards it posed.
The first criterion to consider when evaluating the existence of a legal duty is the relationship of the parties. There was a direct relationship between the installers and plaintiffs. The installers entered plaintiffs’ home for the purposes of delivering and installing a washer and an electric dryer. In addition to their contractual duties, the installers had a duty to take reasonable safeguards to protect plaintiffs from harm.[5] While performing the installation, they also had a duty to conform their conduct to that of a reasonable person.
At the summary disposition hearing, plaintiffs presented evidence that the installers either were aware of, or should have been aware of, the uncapped gas pipe when they were installing plaintiffs’ electric dryer. This is because they have a level of sophistication and knowledge superior to that of plaintiffs with respect to the dangers associated with gas lines, appliances, and their installation. This Court has recognized and imposed a duty on the manufacturer or seller of a product because that party has superior knowledge of the product’s dangerous characteristics.[6] Here, the installers had superior knowledge of the dangerous characteris *675 tics of a pipe that they concealed from plaintiffs with their product. A duty to warn should arise in both circumstances.
The duty to warn in this case is analogous to the duty that this Court described in Glittenberg v Doughboy Recreational Industries (On Rehearing).[7] In Glittenberg, the Court held that
[a] duty is imposed on a manufacturer or seller to warn under negligence principles summarized in § 388 of 2 Restatement Torts, 2d, pp 300-301. Basically, the manufacturer or seller must (a) have actual or constructive knowledge of the claimed danger, (b) have no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fail to exercise reasonable care to inform \users~\ of its dangerous condition or of the facts which make it likely to be dangerousl.[8]
The installers did not deny that they were aware or should have been aware of the uncapped pipe and its dangers. They have not shown that plaintiffs were aware of what it was or what dangers it presented. Plaintiffs’ expert witness, David Stayer, testified:
[IJnstallers are hired because they have a certain level of knowledge and expertise ... more than the homeowner has.
The majority of homeowners have very little ... mechanical background to understand the ramifications of installing things in a certain procedure for safety’s sake. They hire people to do this so that the device or the work that is done is done ... in a proper workmanship-type way, and also so that it’s mechanically safe and physically safe so that there’s not going to be gas leaks, electrical arcs that *676 could cause problems with the devices or fires in the future. That’s what they hire these people for.
In sum, the installers knew or should have known about the gas pipe and had no reason to believe that plaintiffs knew what it was. And they failed to inform plaintiffs of its danger before concealing it with the dryer. Accordingly, the relationship of the parties weighs heavily in favor of imposing a duty on the installers to warn plaintiffs of the danger associated with the uncapped gas line.[9]
The second criterion relevant to determining whether this duty exists is the foreseeability of the harm involved. In this regard, “[a] plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that some injury to the plaintiff was foreseeable or to be anticipated.”[10] Here, plaintiffs’ injuries resulting from the uncapped pipe were unquestionably foreseeable.
The National Fuel Gas Code highlights the foreseeable nature of an accident resulting from an uncapped *677 gas pipe. The code addresses the safe installation and removal of gas piping systems, appliances, and equipment. It provides, in pertinent part:
Each [gas] outlet, including a valve or cock outlet, shall be securely closed gastight with a threaded plug or cap immediately after installation and shall be left closed until the gas utilization equipment is connected thereto. Likewise, when the equipment is disconnected from an outlet and the outlet is not to be used again immediately, it shall be securely closed gastight.
The basic concept here is that a plug or cap closure is required for all gas openings. Closing a valve is not enough to satisfy this requirement because the valve may be opened accidentally or by an unknowing person. No temporary or makeshift closure is permitted because anything except a cap or proper plug could leak.[11]
The code makes clear that gas pipes must be capped to prevent accidents. Moreover, it advises that merely closing a valve is insufficient because the valve could be accidentally opened by a person unfamiliar with gas lines.
James Asaro, a former employee of defendant Exel Direct, Inc., gave deposition testimony that delivery drivers and installers like Pritchard and Dameron were provided extensive training. They were taught what to do when faced with installing an electric dryer in a space where a gas dryer had been removed and an uncapped gas pipe remained. Asaro specifically testified that installers were trained to ascertain that the valve for a gas line is turned off and then to either cap the open pipe or bolt it closed. As Asaro noted, an electric dryer installed so that it masks an uncapped gas pipe is *678 an “accident waiting to happen.” Consequently, plaintiffs have presented forceful evidence that the dangers of an uncapped gas pipe and the attendant risk of injury are entirely foreseeable. Plaintiffs have shown that, in this case, the risks were foreseeable to the installers.
The third criterion relevant to determining whether a duty exists is the burden on the defendant. The burden of verbally warning a homeowner of the dangers presented by an uncapped gas pipe before concealing it is minuscule. This factor also weighs heavily in favor of imposing a duty on the installers.
In sum, I would impose on the installers a simple duty to warn. I do not believe that the installers should be under a duty to investigate any and all potential hazards in plaintiffs’ home. Rather, the scope of their duty should be limited to the area they occupied and in which they installed the electric dryer, which in this case contained the uncapped gas pipe. Their duty should not extend to areas in plaintiffs’ home in which they did not work or that they did not even traverse. Nor should it extend to potential hazards unrelated to the dryer or its installation.
The final factor to consider when determining whether a duty exists is the nature of the risk presented. This factor also weighs in favor of imposing a duty to warn on defendants. We have recognized the potential risk posed by natural gas on numerous occasions, describing it as a “highly dangerous substance”[12] and recognizing that “[ajnyone dealing with this commodity, because of its dangerous propensities, must *679 exercise such care for the safety of others . . . .”[13] Hence, the great danger presented by a gas leak warrants imposing a duty to warn on the installers.[14]
The majority considers the relationship of the parties and concludes that it does not weigh in favor of imposing a duty. It claims that because Marcy Hill was “aware of the pipes in the kitchen niche,” she should have made “further inquiries regarding the nature of the pipes.”[15] But it admits that Hill testified that she thought the pipe in question was a water line. Thus, she did not make further inquiries about it and was unaware that leaving it uncapped posed any danger of gas leakage. The pipe was invisible to her when it began to emit gas. She had no idea where the gas was coming from.[16]
The majority makes a leap of logic in concluding that because Hill knew that the pipe was there, she had *680 constructive notice that it was dangerous. The record contains no evidence that plaintiffs were aware of the danger that the uncapped gas pipe posed. Indeed, knowledge of the existence of what Hill believed was a water line is entirely distinct from knowledge of the dangers of natural gas. The majority thus confuses plaintiffs’ knowledge of the dangers of natural gas with plaintiffs’ knowledge of the dangers of an uncapped gas line. There is no evidence that plaintiffs were aware of the danger of the uncapped pipe protruding from the wall of their laundry nook. Accordingly, the cases relied on by the majority holding that there is no duty to warn of a risk of which a person is constructively aware are inapposite.
DEFENDANTS OWED PLAINTIFFS A LEGAL DUTY NOT TO MAKE AN EXISTING DANGER WORSE
The majority next concludes that the installation of the electric dryer did not create a new dangerous condition or make an existing danger worse. Its analysis of this issue strains credibility.
In Fultz v Union-Commerce Associates, a majority of this Court held that a defendant’s duty in tort must be separate and distinct from the defendant’s duty in contract.[17] As discussed earlier, I would hold that the installers owed plaintiffs common law duties in tort that were separate and distinct from their contractual duties. Fultz identified one class of cases in which a contracting party would owe a duty separate and distinct from a contract — cases in which a defendant’s conduct worsens an existing hazard.[18] Nothing in Fultz *681 undermines the general common law duty to act in a nonnegligent manner. Thus, Fultz’s analysis with respect to new dangerous conditions represents only one way in which a party can establish a duty separate and distinct from a contractual obligation. In this respect, Fultz is entirely consistent with Loweke v Ann Arbor Ceiling & Petition Co, LLC, which held that “a separate and distinct duty to support a cause of action in tort can arise by . .. the generally recognized common-law duty to use due care in undertakings . .. .”[19]
The installers undertook to install plaintiffs’ electric dryer. Plaintiffs allege they were negligent in doing so. Thus, for purposes of that duty, it is entirely irrelevant whether their purported negligence worsened an existing hazard. The proper inquiry, as framed earlier, is whether the installers owed plaintiffs a general duty to act in a reasonable manner. This is because, irrespective of any alleged new hazard, they had a duty to use reasonable care when installing the dryer.[20]
However, under Fultz, the installers also owed plaintiffs a duty not to worsen an existing hazard. Their installation of the electric dryer concealed from view the uncapped gas pipe behind it. Thus, even if plaintiffs knew at some point that dangerous gas was escaping into their home, the source of that gas was concealed *682 from them. Plaintiffs’ expert witness specifically testified that the installation increased the hazard to plaintiffs because they could no longer see the uncapped pipe. Plaintiffs’ expert further explained that the installers should have advised plaintiffs that they could not proceed with the dryer’s installation until the gas pipe was capped.
In sum, the installers owed plaintiffs a general common law duty to use due care when installing the electric dryer. This duty existed regardless of whether the installers’ alleged negligence created a new hazard or increased the danger of an existing hazard. They also owed plaintiffs a duty not to worsen an existing hazard.
CONCLUSION
The majority concludes that the installers owed no legal duty to plaintiffs sounding in tort. This conclusion is fatally flawed because, in fact, the installers owed at least two tort-based duties.[21]
First, the majority opines that the installers owed no tort duty to plaintiffs because the parties’ relationship was limited. This is incorrect. The parties had a relationship that required the installers to use due care when installing plaintiffs’ electric dryer. As a consequence, in addition to their contractual duties, the installers had a common law duty to exercise reasonable safeguards to protect plaintiffs from harm. Accordingly, they had a duty to warn plaintiffs of the danger they encountered in plaintiffs’ home in the spot where they installed the dryer and of which plaintiffs were ignorant.
*683 The majority suggests that plaintiffs were not ignorant of the danger of the gas pipe and that their knowledge of the danger of escaping gas justifies summary disposition for all defendants. Yet that conclusion depends entirely on imputing to plaintiffs knowledge of the danger, given that plaintiffs testified that they believed the pipe was a water pipe. The majority cites no authority for the proposition that knowledge of an uncapped water pipe is a sufficient basis to impute to someone knowledge that gas may escape from that pipe. I suspect no such authority exists. At best, what plaintiffs knew about the pipe is a factual question whose very existence prevents summary disposition. Second, the majority concludes that the installers did not make an existing condition more dangerous when they hid the uncapped gas pipe from view by installing the dryer in front of it. Thus, it postulates as perfectly credible that a hidden uncapped gas pipe poses not a whit more danger than one in plain view. Absent this highly questionable conclusion, the majority’s finding of no duty cannot stand. The majority does not explain how it can be that the visible danger and the invisible danger are legally indistinguishable.
I would hold that the installers owed plaintiffs a common law duty to use due care when installing their electric dryer. This included warning plaintiffs of a danger in the spot where they installed the dryer and of which plaintiffs were ignorant. I would also hold that the installers owed a duty to plaintiffs not to worsen the danger represented by the uncapped gas pipe by obscuring it with a dryer. Accordingly, I respectfully dissent.
CAVANAGH and HATHAWAY, JJ., concurred with MARILYN Kelly, J.

 See Loweke v Ann Arbor Ceiling & Partition Co, LLC, 489 Mich 157, 162; 809 NW2d 553 (2011).

 Clark v Dalman, 379 Mich 251, 261; 150 NW2d 755 (1967).

 Schultz v Consumers Power Co, 443 Mich 445, 449-450; 506 NW2d 175 (1993), quoting Prosser & Keeton, Torts (5th ed), § 53, p 356.

 Dyer v Trachtman, 470 Mich 45, 49; 679 NW2d 311 (2004).

 Huhtala v Travelers Ins Co, 401 Mich 118, 130; 257 NW2d 640 (1977) (“The relationship of the supplier of services with the consumer, although contractual in inception, [gives] rise to a duty imposed by law on the supplier, apart from the terms of their agreement, to take reasonable safeguards to protect the consumer.”).

 Glittenberg v Doughboy Recreational Indus (On Rehearing), 441 Mich 379, 391; 491 NW2d 208 (1992).

 Id.

 Id. at 389-390 (emphasis added) (citation and quotation marks omitted).

 The majority claims that the fact that “[defendants] did not expressly agree to enter plaintiffs’ premises for the purpose of inspecting the gas line” weighs against imposing a duty. Ante at 664 n 37. This claim is misleading. The installers were not contractually obligated to inspect the gas line, but they were contractually obligated to install the electric dryer. They did so in a location directly in front of the uncapped gas pipe without warning plaintiffs of the danger they had concealed. By undertaking to install the dryer, the installers assumed a duty to act in a reasonably prudent manner.
The majority similarly errs in its claim that because the installers did not lay hands on the gas pipe, they did not owe plaintiffs a legal duty with respect to it. See ante at 663-664. Huhtala explicitly held that a duty to act in a reasonable manner and protect a consumer arises “apart from the terms of [a contract].” Huhtala, 401 Mich at 130 (emphasis added).

 Schultz, 443 Mich at 452 n 7 (emphasis added).

 National Fuel Gas Code, § 3.8.2, pp 78-79 (1996) (emphasis added).

 Fleegar v Consumers Power Co, 262 Mich 537, 544; 247 NW 741 (1933) (“A gas company, since it is dealing with a highly dangerous substance, is bound to use a degree of care commensurate with the danger of its gas escaping and causing injury or damage to the person or property of others.”).

 Gadde v Mich Consol Gas Co, 377 Mich 117, 126; 139 NW2d 722 (1966) ("As we have seen, gas has long been regarded as a dangerous substance. Anyone dealing with this commodity, because of its dangerous propensities, must exercise such care for the safety of others as a reasonably prudent man would exercise in the face of such potential danger.”).

 The majority discusses Girvan v Fuelgas Co, 238 Mich App 703, 714; 607 NW2d 116 (1999), which held that a gas supplier has “a duty to ensure that its product is delivered safely to the exterior of the premises of the end user but, in the absence of an agreement to do otherwise, that duty does not extend to the inspection of the interior lines .. . .” Ante at 664 n 37. Girvan further noted that, “[cjognizant of these risks, the reasonable person should seek expert assistance when dealing with dangerous commodities on the person’s premises.” Girvan, 238 Mich App at 714. The majority fails to recognize that plaintiffs did seek experts to install their electric dryer. Those experts were Pritchard and Dameron.

 Ante at 668.

 The majority claims that Hill could have capped or removed the gas line herself or called the gas company when she smelled gas. Ante at 667. This statement is wholly irrelevant to the question before us, which is whether the installers owed plaintiffs a legal duty in tort. These considerations would be relevant to a determination of comparative negligence and would arise only if this case were to proceed to trial.

 Fultz v Union-Commerce Assoc, 470 Mich 460, 467; 683 NW2d 587 (2004). I remain committed to my concurring opinion in Fultz. Id. at 470-476.

 Id. at 468-469.

 Loweke, 489 Mich at 170.

 Id.; see also Clark, 379 Mich at 261 (1967) (stating that a duty “may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others”); Ellis v McNaughton, 76 Mich 237, 241; 42 NW 1113 (1989) (“But, if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts.. ..”) (quotation marks and citation omitted).

 The liability of the defendants is interrelated because the installers had an agency relationship with the defendants who sold and delivered the washer and dryer.