*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DMYTRO MAKSYMENKO,

      Plaintiff-Appellant,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

      Intervening Plaintiff,

v

CONSUMERS ENERGY COMPANY,

      Defendant-Appellee.

UNPUBLISHED
April 27, 2026
9:52 AM

No. 372819
Oakland Circuit Court
LC No. 2023-198923-NO

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

O'BRIEN, J. (*dissenting*).

Over one month before an explosion in plaintiff's home, Consumers replaced the service line[1] outside the home. As part of its work, Consumers dug up the old service line, replaced it with a new service line, tested the new service line, then ran a shadow test of the fuel line inside plaintiff's home, as it was required to do. At no point did Consumers inspect the fuel line or run any other test on that line. The majority concludes, however, that Consumers "owed plaintiff a duty to inspect the fuel line when it replaced the service line." I disagree. When Consumers replaced the service line outside of plaintiff's home, it assumed only a duty to perform this action properly and with due care—it did not assume a duty to inspect the fuel line inside plaintiff's home. Because I would conclude that (1) Consumers did not owe plaintiff a duty to inspect the fuel line

---

[1] I use "service line" to refer to the gas-delivery line running from plaintiff's gas meter away from his home, as opposed to the "fuel line" running from the gas meter into plaintiff's home.

inside his home and (2) there is no evidence that Consumers breached any of the duties that it assumed, I would hold that the trial court properly dismissed plaintiff's negligence claim.

A duty may arise by virtue of the common law. *Dougherty v City of Detroit*, 340 Mich App 339, 347; 986 NW2d 467 (2021). It is a "basic rule of the common law" that "every person engaged in the prosecution of any undertaking" has a duty "to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967).

Our Supreme Court illustrated how this principle works in *Hill v Sears, Roebuck & Co*, 492 Mich 651; 822 NW2d 190 (2012). There, the plaintiff's home was destroyed in an explosion after gas leaking from an uncapped gas line in the home caught fire. *Id*. at 654 The uncapped line was located behind a dryer that the plaintiff bought and paid to have installed. *Id*. at 655-656. After the explosion, the plaintiff brought suit against the installers who installed the dryer, among others. *Id*. at 654. The plaintiff argued in relevant part that the defendant installers "had a common-law duty to cap the gas line or warn plaintiffs of its existence." *Id*. at 662. The Court rejected this argument, *id*. at 669-670, but recognized that the defendant installers nevertheless owed a duty to the plaintiff. The Court explained that the defendant installers undertook to install a washer and dryer in the plaintiff's home, which gave rise to the installer's "limited duty" to perform this undertaking—"the delivery and installation of a washer and an electric dryer"—with "due care." *Id*. at 663. In other words, the defendant installers "had an obligation to use due care when installing the appliances," *id*. at 664, or "to nonnegligently install" the washer and dryer, *id*. at 669, but nothing more, *id*. at 663-664.

Everyone agrees that, in the abstract, Consumers did not owe plaintiff a duty to maintain or inspect the fuel line inside plaintiff's home because that line was not under Consumers' control. See *Girvan v Fuelgas Co*, 238 Mich App 703, 711; 607 NW2d 116 (1999); *Fleegar v Consumers' Power Co*, 262 Mich 537, 544-545; 247 NW 741 (1933). And Consumers did not, in my opinion, ever assume a duty to inspect the fuel line—the only action that Consumers took with respect to the fuel line was running a shadow test on that line. This obligated Consumers to use due care when conducting the shadow test, or to nonnegligently run the shadow test. See *Hill*, 492 Mich at 664, 669. Consumers never entered the premises of plaintiff's home to do any work on the fuel line or otherwise inspect that line, so Consumers never assumed a duty to inspect the fuel line.[2]

Plaintiff argues that Consumers assumed the duty to inspect the fuel line because it was foreseeable that Consumers' work on the service line could "compromise the downstream fuel line." This overstates the duty that Consumers assumed. When Consumers performed work on the service line outside plaintiff's home, it created a "limited relationship" between the parties, which gave rise to a corresponding "limited duty" for Consumers to perform its work with due care. *Id*. at 662. Consumers never inspected nor agreed to inspect the fuel line inside plaintiff's home, so Consumers never assumed this broader duty. See *Girvan*, 238 Mich App at 712

___

[2] As for the duty that Consumers did assume (using due care when running the shadow test), there is no evidence in the record tending to establish that Consumers negligently conducted the shadow test. To the contrary, everyone seemingly agrees that Consumers properly performed the shadow test on the fuel line using due care.

(collecting cases in which gas suppliers were held to owe a duty to maintain a fuel line and explaining that "[i]n each of the cases cited, the gas supplier agreed to enter the plaintiff's premises" to "perform services" and "was negligent in *performing the function it agreed to perform*") (emphasis added). By replacing the service line and testing it, Consumers assumed only a duty to use due care in the prosecution of these undertakings. See *Clark*, 379 Mich at 261.

As for whether Consumers breached this duty, there is simply no evidence in the record suggesting that Consumers failed to use due care when testing and replacing the service line. Plaintiff has never argued that Consumers was negligent in its testing of the service line, or that Consumers otherwise failed to properly test the service line using due care. With respect to Consumers' replacing the service line, plaintiff alleged in his complaint that the "boring" Consumers performed while replacing the service line "was recklessly performed," but he never supported this allegation with any evidence. In fact, Peter Wood—on whose testimony the majority heavily relies—repeatedly stated that he was not alleging that Consumers failed to use due care at any point while replacing the service line.[3] Wood testified that he was not claiming that the boring process (Consumers' use of the "air missile") was improperly performed. Wood also agreed that there was nothing improper about Consumers' use of a trencher or its digging near the meter of plaintiff's home. Wood further agreed that there was nothing improper about Consumers' use of a wrench to loosen and tighten the fittings at the meter leading into plaintiff's home. Even when Wood stated that he believed that Consumers' work near plaintiff's property created sufficient "torque" to crack the pipes in plaintiff's home, he did not believe that "it was improper for Consumers to use the amount of torque that it used." In short, Wood clearly and repeatedly disavowed any claim that Consumers failed to use due care when replacing the service line outside plaintiff's home.

Wood instead faulted Consumers for not inspecting and pressure testing the fuel line inside plaintiff's home, explaining that he believed that the Michigan Residential Code required Consumers to perform these acts. The majority opines that this testimony pertains to the relevant standard of care, but I disagree. If the Michigan Residential Code applied to Consumers' work, compliance was not optional. Consumers was required to comply with any applicable provision of the Michigan Residential Code, and this created a *duty* owed by Consumers. See *Dougherty*, 340 Mich App at 347 (explaining that a duty can be expressly created by statute). The problem for plaintiff is that the portions of the Michigan Residential Code to which Wood cited did not

---

[3] It appears that Wood was not qualified to testify about whether Consumers used due care when replacing the service line. Wood was clear that his experience and expertise related to gas piping inside the home—the fuel line or the line "downstream" from the meter. Wood testified that, despite his decades of experience in the industry, he never worked on a utility-owned gas main, and he only once did work on a service line (but he clarified that he technically should not have done this work because he did not have the utility's permission to do the work that he did). Wood was not licensed to work on service lines, and he did not have any experience in gas "distribution upstream of the meter." Stated succinctly, Woods had virtually no knowledge, skill, experience, training, or education related to how work on service lines should be performed. See MRE 702.

require Consumers to inspect or pressure test the fuel line. Those provisions relate to "piping installations," and Consumers did not install any piping on the fuel line inside plaintiff's home.[4]

To summarize, Consumers did not owe plaintiff a free-standing duty to inspect the fuel line inside plaintiff's home and under his exclusive control. See *Girvan*, 238 Mich App at 711; *Fleegar*, 262 Mich at 544-545. The only duties that Consumers owed plaintiff were the ones that it assumed by engaging in the prosecution of certain undertakings. See *Clark*, 379 Mich at 261. This means that Consumers owed plaintiff duties to (1) use due care when conducting the shadow test on the fuel line inside plaintiff's home and (2) use due care when replacing and testing the service line outside of plaintiff's home. There is no evidence that Consumers breached any of these duties. I would also reject plaintiff's argument that, by assuming these limited duties, Consumers also assumed a broader duty to inspect the fuel line in plaintiff's home. By replacing the service line outside plaintiff's home and running a shadow test on the fuel line inside plaintiff's home, Consumers never inspected or agreed to inspect the fuel line, so it never assumed a duty to do so. See *Hill*, 492 Mich at 669 (explaining that the defendant installers only owed the plaintiff a duty to "nonnegligently install electric appliances" because that was the only task that they "undertook").; *Girvan*, 238 Mich App at 712 (explaining that a gas supplier can be held liable if it "was negligent in performing the function it agreed to perform"). Because the majority disregards this clear and well-established caselaw, I respectfully dissent.

/s/ Colleen A. O'Brien

---

[4] While Consumers did install piping on the service line outside of plaintiff's home, the relevant chapter of the Michigan Residential Code did not apply to the service line. See 2015 Michigan Residential Code G2401.1 (101.2) (stating that this chapter "shall not apply to . . . *gas piping . . .* used by the serving gas supplier in the distribution of gas").