## CLARK *v.* DALMAN.

1. CONTRACTS—REPAIRING, CLEANING, AND PAINTING OF CITY WATER TANK—INSPECTION—NOTICE—PARTIES.
   Provision of contract between defendant, hired to repair, clean, and paint city's elevated water storage tank, and city that defendant give notice to engineer as to when various parts of the work were to commence was to protect the city by giving the engineering firm opportunity to inspect the work at each stage of performance, and plaintiff, inspector for the engineering firm, was no party to the contract nor were the notification provisions designed to give him a benefit, hence, plaintiff's action for breach of the contract is *ex delicto* not *ex contractu.*

2. SAME—BREACH OF CONTRACT—REMEDY IN TORT.
   The remedy for an injury claimed to be due to breach of contract would be *ex delicto,* not *ex contractu,* where the contract is the inducement for creating a state of things which furnishes the occasion of the tort, such as negligently creating a dangerous situation into which a person not a party to the contract may pass.

REFERENCES FOR POINTS IN HEADNOTES
[1–8] 52 Am Jur, Torts § 96.
    38 Am Jur, Negligence §§ 20–22.

3. SAME—PERFORMANCE—NEGLIGENCE—TORTS.

The common-law duty, accompanying every contract, is to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of such conditions is not only a breach of contract, but a tort.

4. SAME—PERFORMANCE—NEGLIGENCE—TORT.

A tort action will lie if a relation exists between the plaintiff and defendant actor which would give rise to the latter's legal duty without enforcing the contract promise itself, where plaintiff has no recourse under the contract which the actor has been negligent in performing.

5. SAME—PERFORMANCE—BREACH OF CONTRACT—TORTS.

A defendant actor who breaches his common-law duty to perform his contract with care, skill, reasonable expediency, and faithfulness, and nothing more, is liable only to those with whom he has contracted or for whose benefit the contract was made, but if he has committed a breach of duty to others by such breach of contract, the actor is not protected by setting up a contract in respect to the same matter with another, as contract obligations do not create torts but may provide the occasion for the commission of torts.

6. TORTS—DETERMINATION OF EXISTENCE OF DUTY BY COURT.

It is the function of the court to determine whether, upon facts and evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act or refrain from acting for the protection of the plaintiff.

7. SAME—INDEPENDENCE FROM CONTRACTS.

The obligations of tort law are for the most part nonconsensual and independent of contract, being generally imposed on men by law simply as a part of the price of living in society, or of engaging in conduct which is likely to affect the actor's fellow beings.

8. NEGLIGENCE—BREACH OF CONTRACT WITH ANOTHER AS TO NOTICE—INJURY TO WATER TANK INSPECTOR.

Failure of defendant, engaged to repair, clear, and paint city's elevated water storage tank, to give notice, pursuant to its contract, to engineering firm that it was about to perform the portion of the contract that required it to paint the interior with a very slippery preservative compound *held*, not unreasonably dangerous conduct, since it was not a negligent act or omission which, under the circumstances, an ordinarily prudent

person ought reasonably to have foreseen or anticipated might possibly result in injury to plaintiff inspector for the engineering firm as a natural and probable consequence of such omission.

Appeal from Allegan; Smith (Raymond L.), J. Submitted Division 3· June 15, 1965, at Grand Rapids. (Docket No. 492.) Decided September 20, 1965. Leave to appeal granted by Supreme Court January 13, 1966. See 377 Mich 697.

Complaint by Robert Clark against Glen Dalman, individually and doing business as Dalman Casemier, for injuries allegedly sustained by a fall inside a watertower that defendant was repairing. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Rhoades, Garlington, McKee & Boer (William J. Garlington,* of counsel), for plaintiff.

*Loker, Boter & Dalman (Peter S. Boter,* of counsel), for defendant.

McGREGOR, J. Glen Dalman, the defendant, entered into a contract on October 2, 1961, with the city of Otsego, to repair, clean, and paint the city's 150,000-gallon elevated water storage tank. Williams & Works, a consulting civil engineering firm, was designated by the city to supervise the work on the tank. The defendant's contract included the following provision:

· "The contractor shall notify the engineer as to the exact time at which he proposes to begin any part of the·work, at least 48 hours in advance of any such start so that the engineer may provide for inspection by resident engineers and/or inspectors under his direction of all materials used, of all work done under this contract."

The contract provided for four inspections of the work on the interior of the tank. The first was to take place prior to the commencement of work; the second, after repairs were made; the third, after the cleaning was completed; and the last, after coating the interior of the tank up to the overflow level with the preservative compound called NO-OX-ID. The plaintiff herein, Robert Clark, was the employee whom Williams & Works designated to make the inspections on this project.

The plaintiff made the inspections of the tank before the work began and during the repairs. Plaintiff's evidence, however, showed that the defendant failed to notify Williams & Works that the cleaning was finished and, instead, immediately applied the NO-OX-ID to the walls and floor of the tank and, also, to the ladder extending from the roof-hatch down into the tank. Witnesses testified that NO-OX-ID is extremely slippery, like lard or grease. Defendant had, in full compliance with requirements of the contract, coated the entire ladder up to about two feet from the roof with this NO-OX-ID.

Since Williams & Works had not heard from Dalman for about a week to ten days after the commencement of repairs, Mr. Williams sent the plaintiff out to check on their progress. On November 27, 1961, plaintiff, unable to locate the defendant to inquire about the state of the work, decided to investigate for himself. He climbed up the outside ladder to the top of the tank. Since he was unable to observe the interior by looking through the opening, he proceeded to climb down the inside ladder. When his head was about two or three feet below the roof line, his feet slipped off the ladder. He was injured when he fell to the bottom of the tank.

Plaintiff brought suit against the defendant contractor, Dalman, to recover for these injuries. Plaintiff's complaint alleges that the defendant's

failure to notify Williams & Works that the NO-OX-ID had been applied to the interior of the tank makes defendant Dalman liable for his injuries on both negligence and breach of contract theories. At the close of defendant's case, the trial court granted defendant's motion for directed verdict on both counts. Plaintiff brings this appeal from the judgment of no cause of action, entered accordingly.

The first question confronting this court is whether the plaintiff's cause of action, if he has one, is in tort or in contract. The plaintiff was not a party to the contract in any sense of the term. Neither the contract nor any of its provisions were designed to give him a benefit of any kind. The notification provisions in the contract appear to have been inserted to protect the city by giving the engineering firm opportunity to inspect the work at each stage of performance.

The plaintiff does not claim that the wrong compound was used or that it was improperly applied. Plaintiff does assert that the defendant Dalman not only breached the notification provisions of the contract but was also negligent in applying the compound without notifying the plaintiff's employer because the application of NO-OX-ID created a dangerous condition for all of those who might enter the water tank. It is stated in 12 Am Jur, Contracts, § 459, p 1042, that:

"Ordinarily, a breach of contract is not a tort. * * * Where the transaction complained of had its origin in a contract which placed the parties in such a relation that in attempting to perform the promised service the tort was committed, the breach of contract is not the gravamen of the action. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all cases the remedy is an action *ex delicto,* and not an action *ex contractu.*"

This rule is of even stronger import in the case at hand, since the plaintiff was not a party to the contract.

What type of contract breach, then, gives rise to a cause of action in tort? *Chase* v. *Clinton County* (1928), 241 Mich 478, 486, quotes with approval 26 RCL, p 758 as follows:

> "Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract."

This rule was clarified in *Hart* v. *Ludwig* (1956), 347 Mich 559, 563–565:

> "The action of tort has for its foundations the negligence of the defendant, and this means more than a mere breach of promise. * * * As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract. * * * The basis of liability in such cases is the failure of the defendant to exercise care and skill in the performance itself. * * * The division thus made, between misfeasance, which may support an action either in tort or on the contract, and the nonfeasance of a contractual obligation, giving rise only to an action on the contract, is admittedly difficult to make in borderline cases. * * * But the significant similarity relates not to the slippery distinction between action and nonaction but to the fundamental concept of 'duty'; in each a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself. * * * Or, as Prosser puts it, (Handbook of the Law of Torts [1st ed], § 33, p 205) 'if a relation exists which would give rise to his legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not'.

"Before us, however, we have not such a case. We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged."

The Texas Court of Civil Appeals, stated the problem this way:

"Negligence which consists merely in the breach of a contract will not afford a ground of action by any one who is not a party to the contract nor a person for whose benefit the contract was avowedly made. The true ˙question is, Has the defendant committed a breach of duty apart from the contract? If he has only committed a breach of the contract heˆ is liable only to those with whom he has contracted; but if he has committed a breach of duty he is not protected by setting up a contract in respect to the same matter with another." *Dallas Hotel Co.* v. *Fox* (1917), 196 SW 647, 651.

Analysis of these authorities indicates that contractual obligations do not create torts but may provide the occasion for the commission of torts.

The trial judge decided the instant case on the distinction that many courts have made between misfeasance and nonfeasance of contractual obligations. The Supreme Court has wisely shied away from this often tenuous distinction. This case should be decided on the issue of legal duty. The question, then, is whether the defendant Dalman had a duty to protect those who might enter the water tank by refraining from coating the interior of the tank with a slippery compound without notification to the engineering firm supervising this work. This is strictly a legal question, since no material facts are in dispute.

"It is the further function of the court to determine whether upon facts and evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act or to refrain from acting for the protection of the plaintiff. This decision is always for the court." 3 Restatement (Second), Torts, § 328B (p 153).

The problem is summarized as follows in one of the more recent treatises on the law of torts:

"In examining the extent of affirmative obligations in tort, special treatment should be given to the negligent nonperformance of duties assumed by contract in cases where that nonperformance involves an unreasonable risk of harm to others—harm over and above the mere withholding of the benefit contracted for.   *   *   *

"The obligations of tort law are for the most part nonconsensual and independent of contract. They are generally imposed on men by law simply as a part of the price of living in society, or of engaging in conduct which is likely to affect the actor's fellow beings. Contract obligations on the other hand are for the most part based on manifested consent which indeed is needed to bring them into being.   *   *   *
Yet in any case there may be negligence in carrying out the contract or in failing to carry it out, and this negligent "misfeasance" or "nonfeasance" may hurt someone, as we have just seen, in a way over and above the withholding of performance. Even where this involved clearly affirmative conduct (*e.g.*, the creation of a defective machine or dangerous premises), we noted that for years courts were reluctant to extend liability beyond privity of contract. Now they recognize that the agreement has no tendency to limit the scope of harm to be foreseen from unreasonably dangerous conduct done by reason of the agreement, and this foresight of harm has been taken as the basis of a duty not based on the consent." 2 Harper & James, The Law of Torts, § 18.6, p 1049.

This Court finds that the failure of the defendant to notify Williams & Works of completion of the various stages of the work on the water tank was not unreasonably dangerous conduct.

"In order that the plaintiff may recover it must appear that his injury was the natural and probable consequence of a negligent act or omission of the defendant which under the circumstances an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as the result of such act or omission." *Clumfoot* v. *St. Clair Tunnel Company* (1902), 221 Mich 113, 116.

The record shows that the plaintiff knew the contract required the defendant to coat the interior of the tank, including the ladder, with NO-OX-ID, and that plaintiff had been in the tank on two occasions prior to his accident. Plaintiff himself testified that he had extensive experience in the inspection of water tanks. This Court concludes that the defendant could not reasonably have foreseen or anticipated plaintiff's accident as the result of his failure to give the contractually required notice to plaintiff's employer.

The judgment of the trial court of no cause of action is affirmed, and costs are awarded to the appellee.

FITZGERALD, P. J., and HOLBROOK, J., concurred.