## CLARK *v.* DALMAN.

### OPINION OF THE COURT.

1. CONTRACTS—REPAIRING, CLEANING, AND PAINTING OF CITY WATER TANK—INSPECTION—NOTICE—PARTIES.

Provision of contract between defendant, hired to repair, clean, and paint city's elevated water storage tank, and city that defendant give notice to engineer as to when various parts of the work were to commence was to protect the city by giving the engineering firm opportunity to inspect the work at each stage of performance, and plaintiff, inspector for the engineering firm, was no party to the contract nor were the notification provisions designed to give him a benefit, hence, plaintiff's action for breach of the contract is *ex delicto* not *ex contractu.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 38 Am Jur, Negligence § 20.
[2] 38 Am Jur, Negligence §§ 4, 12, 27, 28, 49.
[3] 38 Am Jur, Negligence §§ 4, 11, 12, 14.
[5] 38 Am Jur, Negligence §§ 12, 14, 20, 258.
[6, 7] 38 Am Jur, Negligence § 21; 13 Am Jur 2d, Building and Construction Contracts §§ 132, 135.
General contractor's liability for injuries to employees of other contractors on the project. 20 ALR2d 868.
[8] 13 Am Jur 2d, Building and Construction Contracts §§ 132, 144.
[9] 5 Am Jur 2d, Appeal and Error § 545.
[10] 13 Am Jur 2d, Building and Construction Contracts § 144; 38 Am Jur, Negligence § 348.
[11] 38 Am Jur, Negligence § 20.
[12] 38 Am Jur, Negligence § 96.
[13] 38 Am Jur, Negligence §§ 96, 348.
[14] 38 Am Jur, Negligence § 348.
[15] 20 Am Jur, Costs § 14; 5 Am Jur 2d, Appeal and Error §§ 1011, 1012.
[16–18] 38 Am Jur, Negligence §§ 20, 21.
[19] 38 Am Jur, Negligence §§ 49–51.
[20] 38 Am Jur, Negligence §§ 20, 21, 23, 24, 27.
[21, 22, 24] 38 Am Jur, Negligence §§ 174, 181, 184, 189, 201.
[23] 38 Am Jur, Negligence § 187.

2. NEGLIGENCE—EVIDENCE—PROXIMATE CAUSE.

Liability for tort arising from negligent conduct requires proof of the existence of a legal duty on the part of the defendant to the plaintiff, failure on the part of defendant to exercise ordinary care in the performance of his duties, and damage to plaintiff proximately resulting from defendant's negligent performance.

3. SAME—STATUTES—COMMON LAW.

Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, a duty imposed by statute or by common law.

4. CONTRACTS—NEGLIGENT PERFORMANCE—TORTS—BREACH OF CONTRACT.

A common-law duty to perform with ordinary care the thing agreed to be done accompanies every contract relationship and a negligent performance constitutes a tort as well as a breach of contract.

5. SAME—NEGLIGENCE—EVIDENCE—RELATIONSHIP OF PARTIES.

The existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based, where the contract creates the state of things which furnishes the occasion of the tort.

6. NEGLIGENCE—GENERAL CONTRACTOR'S DUTY.

A general contractor has the general duty to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project.

7. SAME—WATER STORAGE TANK—INSPECTOR.

General contractor, engaged to repair, clean, and paint elevated water storage tank, owed duty generally not to endanger plaintiff, a duly authorized inspector, since plaintiff was at least a licensee or possibly an invitee.

8. SAME—WATER STORAGE TANK—INSPECTOR—NOTICE OF APPLICATION OF SLIPPERY SUBSTANCE—QUESTION FOR JURY.

Question of negligence of defendant contractor, engaged to repair, clean, and paint elevated water storage tank, in failing to notify plaintiff inspector that an extremely slippery substance, NO-OX-ID, had been applied *held*, a matter for consideration of jury in action for injuries received, hence, directed verdict for defendant on such issue was reversible error.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SUPREME COURT.

  Normally, a question not passed upon by either a trial court or
    the Court of Appeals will not be passed upon by the Supreme
    Court.

10. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—
  WATER TANK INSPECTOR.

  Evidence presented in action by water tank inspector against
    contractor who had applied a heavy grease-like coating to pro-
    tect the tank *held,* to present question for jury as to whether
    act of plaintiff in entering the tank under the circumstances
    was guilty of contributory negligence.

SEPARATE OPINION.

DETHMERS, C. J., and BLACK, J.

11. NEGLIGENCE—BREACH OF CONTRACT.

  *Determination of whether a breach of contract, entered into*
    *by others, may create a legal duty owing by the party guilty*
    *of such breach to a personally injured third person* held,
    *unnecessary in negligence action by injured person against*
    *party who breached the contract.*

12. SAME—INSPECTION OF WATER TANK—SLIPPERY COATING OF IN-
  SIDE.

  *Defendant who had been engaged to repair, clean, and paint*
    *city's elevated water tank came under duty to notify plain-*
    *tiff's employer, an engineering firm, of fact that inside had*
    *been coated with an extremely slippery substance rendering*
    *it unsafe for all not possessed of such knowledge to enter into*
    *it, where it knew that employees of the engineering firm would*
    *have occasion to enter the inside of the tank for inspection*
    *purposes, the failure to give such notice or warning being*
    *actionable negligence.*

13. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—WATER
  TANK INSPECTOR.

  *Want of due warning of coating of inside of elevated water*
    *tank with an extremely slippery substance, rendered issue of*
    *contributory negligence on part of plaintiff inspector an issue*
    *for jury, where defendant contractor, obligated to give such*
    *warning to plaintiff's employer, since plaintiff's conduct under*
    *the circumstances depended in part upon what in the way*
    *of conduct plaintiff reasonably might have expected of the*
    *defendant.*

14. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

A defendant has the burden of persuasion on the issue of contributory negligence.

15. COSTS—REVERSAL OF DIRECTED VERDICT AND JUDGMENT FOR DEFENDANT.

Costs of all courts are awarded plaintiff, where directed verdict and judgment by the trial court, affirmed by the Court of Appeals, is reversed by Supreme Court.

DISSENTING OPINION.

KELLY, J.

16. TORTS—CONTRACT—THIRD PARTY.

A plaintiff may not rely upon and prove the provisions of a contract between defendant and a third party to sustain plaintiff's right of action in tort against defendant.

17. SAME—NEGLIGENCE—BREACH OF CONTRACT.

Negligence which consists merely in the breach of a contract will not afford a ground for a cause of action by anyone who is not a party to the contract nor a person for whose benefit the contract was avowedly made.

18. SAME — ACTIVE NEGLIGENCE — MISFEASANCE — BREACH OF CONTRACT.

Generally there must be some active negligence or misfeasance to support tort, and there must be some breach of duty distinct from breach of contract.

19. SAME—RIGHT OF RECOVERY—NEGLIGENCE—PROXIMATE CAUSE.

Plaintiff, in order to recover in action for tort, must show that his injury was the natural and probable consequence of a negligent act or omission of defendant which under circumstances an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as the result of such act or omission.

20. NEGLIGENCE—BREACH OF CONTRACT WITH ANOTHER AS TO NOTICE —INJURY TO WATER TANK INSPECTOR.

Failure of defendant, engaged to repair, clean, and paint city's elevated water storage tank, to give notice, pursuant to its contract, to engineering firm that it was about to perform the portion of the contract that required it to paint the interior with a very slippery preservative compound held, not unreasonably dangerous conduct, since it was not a negligent act or omission which, under the circumstances, an ordinarily

*prudent person ought reasonably to have foreseen ·or antici-*
*pated might possibly result in injury to plaintiff inspector for*
*the engineering firm as a natural and probable consequence*
*of such omission.*

21. SAME—DUTY TO USE FACULTIES.

*One is required to make reasonable use of his faculties of sight,*
*hearing, and intelligence to discover dangerous conditions to*
*which he is or may become exposed.*

22. SAME—CONTRIBUTORY NEGLIGENCE.

*One who knows, or in exercise of ordinary care should have*
*known, of existence of danger from which injury might rea-*
*sonably be anticipated and who by voluntary acts or omissions*
*exposes himself to such danger is guilty of negligence, if under*
*the circumstances an ordinarily prudent person would not*
*have incurred the risk of injury which such conduct involved.*

23. SAME—MOMENTARY FORGETFULNESS.

*Momentary forgetfulness of or inattention to a known danger*
*may, and usually does, amount to negligence.*

24. SAME—CONTRIBUTORY NEGLIGENCE.

*Act of plaintiff inspector in entering dark water tank which had*
*been coated with NO-OX-ID, a heavy grease-like coating to*
*protect the interior of the tank and which had been applied*
*in accordance with the contract, without taking precautions*
*for his own safety, held, guilty of contributory negligence as*
*a matter of law.*

Appeal from Court of Appeals, Division 3; Fitz-
gerald, P. J., McGregor and Holbrook, JJ., affirm-
ing Allegan, Smith (Raymond L.), J. Submitted
December 8, 1966. (Calendar No. 19, Docket No.
51,332.) Decided June 6, 1967.

1 Mich App 513, reversed.

Complaint by Robert Clark against Glen Dalman,
individually and doing business as Dalman Case-
mier, for injuries allegedly sustained in a fall in-
side a watertower that defendant was repairing.
Directed verdict and judgment for defendant. Judg-

ment affirmed by Court of Appeals. Plaintiff appeals. Reversed and remanded for new trial.

*William J. Garlington,* for plaintiff.

*Lokker, Boter & Dalman (Peter S. Boter,* of counsel), for defendant.

T. M. KAVANAGH, J. Plaintiff is here on leave granted from the Court of Appeals' affirmation of the trial court's grant of a directed verdict in favor of defendant under both counts of a negligence complaint.

Defendant Glen Dalman entered into a contract with the city of Otsego to repair, clean, and paint a 150,000-gallon elevated water storage tank owned by the city. The consulting engineering firm of Williams. & Works prepared all the specifications for the contract, was designated as engineer in the contract, and had complete charge of all inspections. The contract divided the work to be done into various parts. Defendant contractor was obligated to notify the engineer 48 hours in advance of the time he proposed to begin any one of the several parts of the work so that the engineer could provide for inspection of the work completed.

Plaintiff Robert Clark was the employee whom Williams & Works designated to be in charge of the project and make all the inspections. Defendant Dalman knew of plaintiff's designation and talked with plaintiff several times about the work. Plaintiff made inspections of the tank before the work began and during the repairs. Plaintiff's proofs indicated that defendant failed to notify Williams & Works that the cleaning of the tank was finished, and instead immediately applied the NO-OX-ID to

the walls and floor of the tank as well as to the
ladder extending from the roof hatch down into
the tank.

Witnesses testified that NO-OX-ID is extremely
slippery, like lard or grease. The contract specifi-
cations required defendant to coat the entire ladder
up to about two feet from the roof with NO-OX-ID.

Plaintiff testified that he went to the premises
for the purpose of inspection. In attempting to
look into the tank, he discovered that even with a
flashlight he was unable to see inside the tank.
Therefore, he proceeded to descend into the water
tank and slipped on the NO-OX-ID coating applied
to the tank and ladder by defendant. Plaintiff
suffered serious injuries when he fell to the bottom
of the tank.

Plaintiff instituted suit in April 1963, by com-
plaint, alleging in paragraph 9 of the first count
that plaintiff's personal injuries were proximately
caused by defendant's breach of warranty and fail-
ure to notify Williams & Works or plaintiff of the
stage of the work involved and the fact that the
water tank had been coated with a greasy compound,
of which plaintiff had no knowledge.

Count 2 was a negligence count and paragraph 15
thereof read as follows:

"15. That plaintiff's injuries and damages were
caused solely by the negligence of defendant in the
following particulars:

"(a) Failure to warn Williams & Works and/or
plaintiff that the water tank had been coated with
a greasy compound when it was known or should
have been known that such compound created a
slippery and dangerous condition to anyone walking
there.

"(b) Failure to warn Williams & Works and/or
plaintiff that the water tank had been coated with
a greasy compound when it was known or should

have been known that plaintiff was going to inspect
the tank and would in all likelihood fall as the
result of said compound.

"(c). Failure to warn Williams & Works and/or
plaintiff that the water tank had been coated with
a greasy compound when it was known or should
have been known that such compound was hard to
see and observe and would create a highly hazardous
condition for anyone walking in the tank.

"(d) Failure to provide plaintiff with assistance
for his inspection when it was known or should have
been known that assistance was needed to prevent
injury to plaintiff as a result of the greasy coating
on the tank, of which plaintiff had no knowledge."

Defendant answered, and as to count 2, paragraph
15, denied that plaintiff's injuries and damages were
caused solely by the negligence of defendant. De-
fendant denied that he failed to warn Williams &
Works or plaintiff that the water tank had been
coated. He denied the use of any greasy compound
except NO-OX-ID which was prescribed in the speci-
fications, and further alleged this type of coating
was well known to Williams & Works and to plain-
tiff. Defendant stated that Williams & Works and
plaintiff knew or should have known that the tank
had been coated with the prescribed NO-OX-ID and
asserted the truth to be that plaintiff, with full
knowledge of the condition existing, could or should
have exercised such care for his own safety as to
avoid any likelihood of a fall as a result of the
compound. Defendant further denied that the coat-
ing on the interior of the tank was difficult to see
and denied that said coating created a highly haz-
ardous condition, and alleged that plaintiff in the
exercise of reasonable care in the circumstances
could and should have avoided any injury to him-
self. Defendant further asserted that he at all times
stood ready to provide plaintiff whatever assistance

he might require in the inspection of said tank. An affirmative defense of contributory negligence was also pleaded.

At the conclusion of the trial, the trial court directed a verdict for defendant on the contract count, stating:

"Count 1, as the court sees it, is founded on allegations of breach of contract, but in essence it is an *ex delicto* action. That is, when you look at the substance of the claims and allegations it is *ex delicto,* a tort.

"Now, research of counsel and of the court discloses that in the State of Michigan we are committed to the rule that tort may not be founded upon the failure to perform a contract, in other words, nonfeasance.

"Tort may be founded upon misfeasance, that is the negligent performance of a contract, but not the failure to perform."

As to count 2, the trial court concluded there was no negligence on the part of the defendant and, therefore, no fact question for the jury to decide under count 2, and directed a verdict of no cause for action on both counts.

The Court of Appeals affirming the trial court said (1 Mich App 513):

"This case should be decided on the issue of legal duty. The question, then, is whether the defendant Dalman had a duty to protect those who might enter the water tank by refraining from coating the interior of the tank with a slippery compound without notification to the engineering firm supervising this work. This is strictly a legal question, since no material facts are in dispute." (p 519)

"This Court finds that the failure of the defendant to notify Williams & Works of completion of the various stages of the work on the water tank was not unreasonably dangerous conduct.   *   *   *

"The record shows that the plaintiff knew the contract required the defendant to coat the interior of the tank, including the ladder, with NO-OX-ID, and that plaintiff had been in the tank on two occasions prior to his accident. Plaintiff himself testified that he had extensive experience in the inspection of water tanks. This Court concludes that the defendant could not reasonably have foreseen or anticipated plaintiff's accident as the result of his failure to give the contractually required notice to plaintiff's employer." (p 521)

On appeal to this Court we have two questions:

*First.* Whether plaintiff's cause of action, if he has one, is in tort or in contract. If count 1 was intended to state a cause of action on the contract, and we conclude it does, then the trial court was correct in directing a verdict for the defendant on this count. Since the plaintiff was not a party to the contract in any sense of the term, he cannot enforce an obligation created by it. Neither the contract nor any of its provisions was designed to give him a benefit of any kind. The trial court was correct in concluding that in essence plaintiff's remedy was an action *ex delicto* sounding in tort. See *Hampson* v. *Larkin* (1945), 318 Mass 716 (63 NE2d 888).

*Second.* Count 2, however, presents a more difficult question. In order for plaintiff to be entitled to go to the jury on the negligence count, he must prove: first, the existence of a legal duty on the part of the defendant to the plaintiff; second, failure on the part of defendant to exercise ordinary care in the performance of his duties; and third, damage to the plaintiff proximately resulting from negligent performance of duties by defendant.

Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and

such duty must be imposed by law. The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another. *Pinnix* v. *Toomey* (1955), 242 NC 358, 362 (87 SE2d 893).

Such duty of care may be a specific duty owing to the plaintiff by the defendant, or it may be a general one owed by the defendant to the public, of which the plaintiff is a part. Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. But it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort. This being so, the existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based. *Pinnix* v. *Toomey, supra,* p 362, and cases therein cited.

A favorable-to-plaintiff view of the evidence indicates that pursuant to the contract between defendant and the city of Otsego, plaintiff was the duly authorized inspector of the project with obligations of general inspection as well as the specific duty of inspecting the various stages of the repair operation before defendant was authorized to proceed to the next step in the repair work. Far from being a trespasser on the premises, plaintiff was at least a licensee, or possibly an invitee.* The general duty of a contractor to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project, is well settled. It is clear defendant owed such a duty to plaintiff,

---

* Defendant Dalman testified on direct examination as follows:

"Q. Now, some time prior to—shortly prior to November 27, 1961, you called Williams & Works, did you not?

"A. Yes.

"Q. And you requested they send down an inspector, did you not?

"A. Yes.

"Q. And did you—did you at that time advise them of the status of the work?

"A. I don't know.

"Q. You do not know for sure?

"A. No."

On cross-examination defendant Dalman testified as follows:

"Q. * * * Now, when was the first time you talked with Mr. Clark after you entered into the contract?

"A. I couldn't say. I don't know.

"Q. Well, was it after the repair work was done?

"A. It was probably during—sometime during the job, yes.

"Q. You talked to him once?

"A. Oh, no, I seen him more than that.

"Q. I see. Witness, you never at any time prior to the time that you put on the NO-OX-ID notified anybody at Williams & Works that it was ready for inspection, did you?

"A. Pardon me?

"Q. You never at any time, prior to putting on the NO-OX-ID notified anybody at Williams & Works they should come down and inspect the tanks, did you?

"A. Yes, I did.

"Q. Who did you notify?

"A. Bob.

"Q. When did you notify him?

"A. I don't know when, but Bob was around the job several times. I also called him on the phone several times."

who was lawfully on the premises at defendant's request.

In *Anderson* v. *Deming Motor Sales,* 371 Mich 223, 229, 230, this Court quoted with approval from *Cabana* v. *City of Hart,* 327 Mich 287, 305 (19 ALR2d 333), as follows:

" 'In considering the question whether defendant was entitled to a directed verdict, the testimony must be construed as strongly as possible in favor of the plaintiff. (Citing cases.)    The specific inquiry is whether this Court can say, as a matter of law, giving to plaintiff's proofs the strongest probative force to which they are entitled, that the evidence was not sufficient to justify submitting to the jury the questions of defendant's negligence and its knowledge or notice of the situation.' "

Might reasonable minds differ as to whether defendant Dalman was guilty of negligence in failing to warn plaintiff of the NO-OX-ID coating on the tank in view of the following evidence?    Defendant had previously called plaintiff requesting inspections; plaintiff was lawfully on the premises pursuant to his duties as the inspector; defendant knew there was only a two-foot trap door through which light could reach the inside of the tank and through which plaintiff would have to push his head and shoulders to view the inside of the tank; defendant knew or in the exercise of reasonable care ought to have known that plaintiff would have to enter the tank; defendant knew his contract required him to notify plaintiff's employer of the completion of the cleaning process in order that inspection might be made before he proceeded to apply the NO-OX-ID, but despite this he failed to do so; NO-OX-ID is extremely slippery, like lard or grease.

From an examination of the facts in the light most favorable to plaintiff, we conclude reasonable

minds might so differ based on the facts in this record. Therefore, we must conclude that the trial court erroneously granted the motion for directed verdict under count 2 and that the Court of Appeals was in error in affirming the directed verdict.

Justice Kelly in his opinion discusses the subject of contributory negligence on the part of plaintiff. Admittedly this subject was not passed upon by the Court of Appeals nor by the trial court. Normally, under these circumstances, we would not pass on it here. However, a careful reading of the entire testimony would lead us to a conclusion that reasonable minds might differ as to whether plaintiff was guilty of contributory negligence by entering the tank under the circumstances and in the manner indicated.

We conclude, therefore, that the question of contributory negligence of the plaintiff would be a question for the jury.

The judgment is reversed and a new trial granted. Plaintiff shall have costs.

Souris, O'Hara, and Adams, JJ., concurred with T. M. Kavanagh, J.

Black, J. (*concurring in reversal*). I find no occasion for determination of question whether the breach of a contract, entered into by others, may create a legal duty owing by the party guilty of such breach to a personally injured third person.

Regardless of the breach claimed, this plaintiff has fairly presented a submissible case of actionable negligence. The jury was authorized upon the record made before it to find that defendant should have advised the plaintiff's employers promptly that an extremely slippery substance known as NO-OX-ID had just been applied throughout the inside

of the elevated tank. Defendant's duty in such regard arose, on favorable view of course, from the bare fact of knowledge on his part that the substance as applied was extremely slippery and that employees of Williams & Works were due regularly to enter the inside of the tank for inspection purposes. On similar view one may not doubt reasonably that the interior of the tank was precedently known by defendant to be unsafe for all, not possessed of knowledge of such recent application of NO-OX-ID, who might have legal occasion to enter it.

As for the defense of contributory negligence it need only be said that the want of due warning, if found by the jury, rendered the question one for jury determination. We have said several times, following *Detroit & M. R. Co.* v. *Van Steinburg,* 17 Mich 99, that the question of contributory negligence depends in part upon what in the way of conduct the plaintiff reasonably might have expected of the defendant. If there was no warning as claimed, then the jury could have found justifiably that plaintiff proceeded toward the inspection on assumption that the inside of the tank was in the same condition as to safety as when last inspected; only to be confronted in total darkness, lifted only by flashlight, with that which caused his fall to the bottom of the tank. The question of due care on his part was an issue with respect to which the defendant bore the burden of persuasion. It was for the jury to say whether, in the circumstances presented, he was or was not guilty of causal negligence.

The judgments of both courts should be reversed, with an award of costs of all courts to plaintiff.

DETHMERS, C. J., concurred with BLACK, J.

1.

Kelly, J. (*dissenting*). I agree with my Brother's reason why plaintiff cannot recover under count one. Justice Kavanagh states:

"Since the plaintiff was not a party to the contract in any sense of the term, he cannot enforce an obligation created by it. Neither the contract nor any of its provisions was designed to give him a benefit of any kind."

I disagree with his finding that plaintiff can rely on that same contract to maintain his action in tort.

No decision of this or any other State has been called to attention that would give the right to plaintiff to rely upon and prove the provisions of a contract between defendant and a third party to sustain plaintiff's right of action in tort against defendant.

There are decisions to the contrary. In *Hampson v. Larkin,* 318 Mass 716 (63 NE2d 888), the supreme court of Massachusetts considered an appeal where the defendant had contracted with a Catholic bishop to reconstruct a parochial school. The contract provided that sufficient, safe, and proper facilities for the inspection of the work by the architect or his authorized representative would be furnished at all times by the defendant.

Plaintiff, who had been employed by the bishop to inspect defendant's work, was injured when a ladder slipped and plaintiff fell. Plaintiff commenced action in tort against defendant contractor. The jury found for defendant, and plaintiff appealed, assigning error because the court instructed the jury "that the defendant must use reasonable care to have the instrumentalities used in connection with his work reasonably safe and that the duty owed by the defendant to the plaintiff 'so far as the furnish-

ing of facilities   *   *   *   is concerned,. was not
varied or heightened by any   *   *   *   contract'
between the defendant and the bishop."

Plaintiff excepted to this instruction, claiming that
the above mentioned provision of the contract must
be considered in determining the duty owed by the
defendant to plaintiff and that under it the defend-
ant became an insurer that safe and proper facilities
would be furnished. The supreme court stated:      ···'

"We do not agree. The plaintiff was not a party
to this contract and cannot enforce an obligation,
created by it, that the defendant owed to the bishop."

In *Dallas Hotel Co.* v. *Fox,* 196 SW 647, the'
Texas Court of Civil Appeals considered a case
where plaintiff Fox's husband died as a result of
injuries received in an elevator mishap. The widow
claimed defendant should be held liable for the in-
juries because defendant had contracted with plain-
tiff's decedent's employer to keep the elevator in re-
pair. The court, considering plaintiff's right to use
the employer's contract to prove defendant's negli-
gence, stated (p 651):

"Negligence which consists merely in the breach
of a contract will not afford a ground of action by
any one who is not a party to the contract nor a'
person for whose benefit the contract was avowedly
made.   *   *   *   The true question is, Has the defend-
ant committed a breach of duty apart from the con-
tract? If he has only committed a breach of the con-
tract he is liable only to those with whom he has
contracted; but if he has committed a breach of
duty he is not protected by setting up a contract in
respect to the same matter with another."

In *Tuttle* v. *George H. Gilbert Manufacturing Co.,*
145 Mass 169 (13 NE 465), the Massachusetts su-
preme court held (p 175):

"As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract. * * * If the defendant had performed the work contemplated by its contract unskillfully and negligently, it would be liable to an action of tort, because in such case there would be a misfeasance, which is a sufficient foundation for an action of tort."

There is no claim in this appeal that defendant performed the work "unskillfully and negligently," and the Court of Appeals comments on that fact as follows:

"Defendant had, in full compliance with requirements of the contract, *coated the entire ladder up to about two feet from the roof with this NO-OX-ID.* * * * The plaintiff does not claim that the wrong compound was used or that it was improperly applied." (Emphasis ours.) 1 Mich App 513, 516, 517.

Courts have recognized the right of plaintiffs to sue in tort where a *contractual relationship exists between plaintiff and defendant,* but even though that relationship existed in this appeal, plaintiff did not present evidence that would sustain an action in tort.

We quote with approval the concluding paragraphs from the opinion of the Court of Appeals (p 521):

"This Court finds that the failure of the defendant to notify Williams & Works of completion of the various stages of the work on the water tank was not unreasonably dangerous conduct.

" 'In order that the plaintiff may recover it must appear that his injury was the natural and probable consequence of a negligent act or omission of the

defendant which under the circumstances an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as the result of such act or omission.' *Clumfoot* v. *St. Clair Tunnel Company* (1902), 221 Mich 113, 116.

"The record shows that the plaintiff knew the contract required the defendant to coat the interior of the tank, including the ladder, with NO-OX-ID, and that plaintiff had been in the tank on two occasions prior to his accident. Plaintiff himself testified that he had extensive experience in the inspection of water tanks. This Court concludes that the defendant could not reasonably have foreseen or anticipated plaintiff's accident as the result of his failure to give the contractually required notice to plaintiff's employer.

"The judgment of the trial court of no cause of action is affirmed, and costs are awarded to the appellee."

2.

Appellee presented to this Court in his "counter-statement of questions involved" the following questions:

"Was the appellant guilty of negligence as a matter of law which was a proximate cause of his injury when he entered into a dark tank without taking precautions for his own safety?"

We quote the following from appellee's brief filed in this Court:

"Taking the appellant's own testimony most favorably to him, appellee contends that the appellant is guilty of contributory negligence as a matter of law. This question was presented both to the trial court and the Court of Appeals. However, in both courts the question was not decided. The decision in both the trial court and the Court

of Appeals was based upon the lack of a legal duty owing by the appellee to the appellant. If this Court should feel otherwise, however, then a consideration of the question herein presented [contributory negligence] would be properly before this Court."

We agree with appellee's contention in this regard.

Plaintiff testified:

"I went up the outside ladder on this leg of the tank here to the cat walk and I went up this other ladder from the cat walk up to the roof. I looked in the opening here which was open and I couldn't see anything so then I proceeded to climb down inside. And I was inside—probably *my head was two or three feet under the roof of the tank* when I was reaching for my flashlight to see if I could see anything inside the tank. And my feet went out from under me and I was falling, slipping toward that hole in the center of the tank, that riser pipe. So in my falling I was reaching for something and I grabbed one of these bars with my right arm and I was able to haul myself back out of the pipe and climb back out this ladder and down to the ground. * * *

"*Q*. You testified you looked down into the tank and you could not see anything in the tank. What was the appearance as you looked down in there?

"*A*. There wasn't—there wasn't anything to see. It was just as black as coal." (Emphasis ours.)

We established that one must make a reasonable use of his faculties to discover dangerous conditions in *Rice* v. *Goodspeed Real Estate Co.*, 254 Mich 49, and stated (p 55):

"There is almost unlimited authority in adjudicated cases covering the following propositions: (1) One is required to make reasonable use of his faculties of sight, hearing, and of intelligence to discover dangerous conditions to which he is or he may be-

come exposed. (2) One who knows or in the exercise of ordinary care should have known the existence of danger from which injury might reasonably be anticipated and who by his voluntary acts or omissions exposes himself to such danger is guilty of negligence, if under the circumstances an ordinarily prudent person would not have incurred the risk of injury which such conduct involved. (3) Momentary forgetfulness of or inattention to a known danger may, and usually does, amount to negligence."

In *Steger* v. *Immen,* 157 Mich 494 (24 LRA NS 246), our Court commented upon entering dark areas where you can see nothing, and said, at page 498:

" 'If it was so dark in there that he could "see nothing," it was certainly an act of folly on his part to enter on a cruise of exploration and discovery without stopping to determine whether it was safe to proceed.' "

In *Jones* v. *Michigan Racing Association,* 346 Mich 648, we spoke about taking unnecessary risks, as follows (p 652):

"The testimony, construed in the light most favorable to plaintiff, discloses that at least the latter 2 choices, if not the first, were open to plaintiff and that it was or should have been apparent to him at the time that any of them involved less risk than the course actually pursued by him. Defendant urges that it was contributory negligence for plaintiff not to have selected one of these safer courses. Support for that contention is clearly expressed in *Lake S. & M. S. R. Co.* v. *Bangs,* 47 Mich 470 (4 Am Neg Cas 29); *Rohlfs* v. *Township of Fairgrove,* 174 Mich 555; *Burchard* v. *Otis Elevator Co.,* 261 Mich 142."

We quote with approval the following statement of the trial court:

. "The testimony of Mr. Clark is the same in respect to both counts. He went there to inspect, to discover what conditions existed, and it seems to the court that the minds of reasonable men would not differ as to what his duty was at that time. He had no right or reason to rely upon any state of facts, or any condition, because he admits that he is going to the job to discover what conditions exist."

We agree with defendant and appellee that taking the appellant's own testimony most favorably to him, appellant is guilty of contributory negligence as a matter of law.

The judgment should be affirmed. Costs to appellee.

Brennan, J. took no part in the decision of this case.