# STATE OF MICHIGAN

# COURT OF APPEALS

JOANNE JOHNSON, Next Friend of
SAMANTHA JOHNSON, a minor, and JOANNE
JOHNSON individually,

Plaintiff-Appellants,

v

OUTBACK LODGE & EQUESTRIAN CENTER,
LLC, and OUTBACK LODGE, LLC,

Defendants,

and

GIRL SCOUTS OF NORTHERN INDIANA-
MICHIANA, INC.,

Defendant-Appellee.

UNPUBLISHED
March 10, 2016

No. 323556
Mecosta Circuit Court
LC No. 12-020925-NO

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiffs appeal by right the order granting summary disposition to defendant Girl Scouts of Northern Indiana-Michiana Inc. pursuant to MCR 2.116(C)(10).[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2010, plaintiff Samantha Johnson, a minor, attended a horseback riding camp sponsored by defendant and held on the property of Outback, a horse ranch. Defendant's

---

[1] Defendants Outback Lodge & Equestrian Center, LLC and Outback Lodge, LLC (collectively, "Outback") are not parties to this appeal, having stipulated with plaintiffs to dismissal of the action against it with prejudice. We will therefore refer to defendant Girl Scouts of Northern Indiana-Michiana, Inc. as "defendant" or "GSNIM."

-1-

previous camp director testified that in the past, defendant had held horseback riding camps on its own properties, but had decided to host a camp on Outback's grounds in 2009 and 2010. Samantha was not an experienced horseback rider, and testified that two tests were administered to her and her fellow campers in order to assess their riding ability and familiarity with horses. One test was described as a written "quiz," that asked campers basic questions about interacting with horses[2]. The second was a practical test during which one of the managers of Outback watched the campers ride horses in a corral or arena.

Samantha was paired with a small horse or "show pony" for the arena test. However, the pony was unable to be utilized for a trail ride the following day, so Samantha was paired with a full-size horse. Prior to the trail ride, Samantha and the other campers were instructed to select riding helmets. Samantha picked a helmet that was too large, and she informed two "counselors" or "leaders," who may have been employees of either defendant or Outback. According to Samantha, one leader told her to find the best fit that she could and "go," while the other pulled the chin strap of her helmet as tight as it could go, which still left the helmet loose.

Samantha recalled that during a break in the trail ride to fix a camper's saddle that was slipping, her horse began to walk around of its own volition, which frightened her. Samantha testified that she expressed her discomfort to one of defendant's counselors, who dismounted her horse and stood with Samantha for a time until they were directed to remount by the leader of the trail ride, an Outback employee. Either before or just after the trail ride resumed, the horse Samantha was riding became "spooked," perhaps by another horse biting or kicking it, and ran away from the rest of the group. Samantha testified that the helmet she was wearing came loose and slid to the back of her head while the horse was running. Samantha was injured when she hit a tree branch and fell from the horse.

Plaintiffs brought suit alleging that defendant was liable for Samantha's injury. At summary disposition, defendant argued that it was immune from liability under the Equine Activity Liability Act (EALA), MCL 691.1661 *et seq.*, and further that there was no genuine issue of material fact regarding the existence of or breach of a duty owed by defendants to Samantha. In response to defendant's motion for summary disposition, plaintiffs argued additionally that defendant was liable for the actions of Outback pursuant to an ostensible agency theory, and sought to amend their complaint to add a separate count to that effect. The trial court considered plaintiffs' ostensible agency argument, but ultimately granted defendant's motion for summary disposition, and therefore denied plaintiffs' motion to amend their complaint. This appeal followed.

## II. EALA

Section 3 of the EALA, MCL 691.1663, provides that "an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or

---

[2] The manager of Outback testified that a typical question on the quiz might be as follows: when approaching a horse, "should you A, run up to them really fast and scream[?]"

property damage resulting from an inherent risk of an equine activity" except as otherwise provided in § 5 of the statute, MCL 691.1665. An "equine activity sponsor" is defined as "an individual, group, club, partnership, or corporation, whether or not operating for profit, that sponsors, organizes, or provides the facilities for an equine activity[.]" MCL 691.1662(d). An "equine activity" includes, *inter alia*, "[r]iding, inspecting, or evaluating an equine belonging to another . . . ." MCL 691.1662(c)(v). The § 5 exceptions to § 3's limitation on liability apply if the equine activity sponsor or professional has done any of the following:

> (a) Provides equipment or tack and knows or should know that the equipment or tack is faulty, and the equipment or tack is faulty to the extent that it is a proximate cause of the injury, death, or damage.

> (b) Provides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. A person shall not rely upon a participant's representations of his or her ability unless these representations are supported by reasonably sufficient detail.

> (c) Owns, leases, rents, has authorized use of, or otherwise is in lawful possession and control of land or facilities on which the participant sustained injury because of a dangerous latent condition of the land or facilities that is known to the equine activity sponsor, equine professional, or other person and for which warning signs are not conspicuously posted.

> (d) Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage.

Defendant argued that it was not liable under § 3 of the EALA based on its status as an "equine activity sponsor," and that any liability for plaintiff's damages fell on Outback because it had provided the tack, equipment, and horses used by Samantha. The trial court found that while the EALA did not preclude a finding of liability against defendant, plaintiffs had not established that any of the exceptions in § 5 of the statute applied to their case. We agree with regard to MCL 691.1665(a) and (b), but disagree with regards to (d).

A. MCL 691.1665(a) AND (b)

The trial court found that defendant was not liable under MCL 691.1665(a) or (b) because the statute required the equine activity sponsor to "actually provide the equipment or tack in the case of subsection (a) and the horse in subsection (b)" and plaintiffs had not rebutted the testimony that "Outback Lodge, not GSNIM, picked the horse for each participant and provided those horses" and equipment. We agree.

The exceptions to the EALA's broad grant of immunity are set forth in MCL 691.1665. Those exceptions include that "[MCL 691.1663] does not prevent or limit the liability of an equine activity sponsor . . . if the equine activity sponsor . . . does any of the following".

(a) *Provides equipment or tack and* knows or should know that the equipment or tack is faulty, and the equipment or tack is faulty to the extent that it is a proximate cause of the injury, death, or damage.

(b) *Provides an equine and* fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. A person shall not rely upon a participant's representations of his or her ability unless these representations are supported by reasonably sufficient detail. [Emphasis added.]

The trial court found that the record in this case reflects the absence of any evidence of conduct by defendant to "[p]rovide[] equipment or tack" or to "[p]rovide[] an equine." MCL 691.1665(a) and (b). To the contrary, defendant presented evidence that any such conduct was solely that of Outback[3], and not of defendant. By contrast, Samantha testified that she thought the person who provided her with a horse was from Outback, and that she did not know whether the individuals who fitted and adjusted her helmet were from Outback or defendant, but that she knew that none of those individuals was the one counselor whom she knew to be from defendant. Consequently, the evidence that defendant did not "[p]rovide[] equipment or tack" or "[p]rovide[] an equine," MCL 691.1665(a), (b), was uncontested other than by speculation that is insufficient to create a genuine issue of material fact. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994), overruled in part on other grounds, *Smith v Globe Life Ins Co*, 460 Mich 446, 454 n 2; 597 NW2d 28 (1999), superseded in part by statute as stated in *McLiechey v Bristol West Ins Co*, 408 F Supp 2d 516, 523-524 (WD Mich, 2006). We therefore affirm the trial court's grant of summary disposition regarding the provision of the equine, tack, and equipment.

## B. MCL 691.1665(d) AND NEGLIGENCE

MCL 691.1665(d) provides that an equine activity sponsor may be held liable for a "negligent act or omission that constitutes a proximate cause of the injury, death, or damage."[4] Plaintiffs argue that defendant is liable for Samantha's injuries under MCL 691.1665(d) due to its negligent selection of Outback as the site of its camp because Outback lacked certified instructors, which defendant had "promised" to provide, and liability insurance, which was required by defendant for stable operators by its "Safety-Wise" manual, a safety handbook

---

[3] The evidence does not does not distinguish as between defendants Outback Lodge & Equestrian Center, LLC and Outback Lodge, LLC; nor does the trial court's opinion. However, the distinction is immaterial for purposes of this analysis.

[4] The current version of the statute, amended September 21, 2015, states that the act or omission must constitute "a willful or wanton disregard for the safety of the participant" as well as be a proximate cause of the injury, death or damage. See MCL 691.1665 as amended by 2015 PA 87 (effective date September 21, 2015). The instant injury occurred while the previous version of the EALA was in effect.

published by the Girl Scouts of the United States of America and adhered to by defendant. Plaintiffs also cite language from the "Challenge Adventure Program Participation Agreement" (the Agreement) included in defendant's registration documents and signed by Samantha and her mother, plaintiff Joanne Johnson, before Samantha participated in the camp. The Agreement stated that defendant's employees had "received extensive training and will work to protect the emotional and physical safety of myself and/or my child."

The trial court found that, contrary to the Agreement, none of defendant's counselors "had received any training with regard to horses," and defendant had instead relied on Outback to provide all horse-related supervision and instruction. The court also acknowledged that the evidence supported plaintiffs' argument that defendant was negligent for failing to ascertain whether Outback held liability insurance coverage and provided qualified instructors as required by defendant's Safety-Wise guidelines. However, the court found that no standard of care was created by either defendant's Safety-Wise manual or by the Agreement. The court further concluded that in order to survive a motion for summary disposition under MCR 2.116(C)(10), plaintiffs had to show with "precision" the extent of such a duty and how it was breached. We disagree.

In *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 281; 807 NW2d 407 (2011), we held that a plaintiff must establish four elements in order to bring a negligence claim: "(1) duty, (2) breach of duty, (3) causation, and (4) damages." "'Duty' is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm" which "may arise by contract, statute, constitution, or common law." *Cummins v Robinson Twp*, 283 Mich App 677, 692; 770 NW2d 421 (2009); *West American Ins Co v Gutekunst*, 230 Mich App 305, 310; 583 NW2d 548 (1998). With respect to the general duty of care imposed by common law, "every person is under the general duty to so act, or to use that which he controls, as not to injure another." *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), impliedly overruled on other grounds by *Fultz v Union Commerce Assocs*, 470 Mich 460; 683 NW2d 587 (2004), as stated in *Lakeland Reg'l Health Sys v Walgreens Health Initiatives, Inc*, 604 F Supp 2d 983, 999 (WD Mich, 2009).

Generally, a person does not have an affirmative legal duty to aid or protect another person. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). However, this Court has held that a duty to aid or protect may be imposed where a "special relationship" exists between parties. *Dykema v Gus Macker Enterprises, Inc*, 196 Mich App 6, 8-9; 492 NW2d 472 (1992). "Some generally recognized 'special relationships' include common carrier-passenger, innkeeper-guest, employer-employee, landlord[-]tenant, and invitor-invitee." *Id*. at 8. The underlying rationale for a special relationship is the element of control; "[t]hus, the determination whether a duty-imposing special relationship exists in a particular case involves the determination whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control to protect himself." *Id*. at 8-9. "The ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." *Hill*, 492 Mich at 661 (brackets, internal quotation marks, and citation omitted). "Factors relevant to the determination whether a legal duty exists include the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*. (internal quotation marks and citation omitted).

In *Terrell v LBJ Electronics*, 188 Mich App 717, 718-719; 470 NW2d 98 (1991), the plaintiff, a minor, argued that a special relationship arose between himself and the defendant when the defendant volunteered to drive him home from a Boy Scout meeting. We held that it was reasonable to impose a duty of care on a person who volunteered to drive a child to his home, as there was "little utility in a rule which would permit a person to volunteer to drive a child to his home without imposing on that person a duty to do it with due care." *Id*. at 722. Similarly, in the instant case, a special relationship arose between defendant and Samantha when she registered for the camp and agreed, along with her mother, to place herself under the control of defendant for the duration of the camp. In *Terrell*, we did not point to any requirement that the plaintiff had to show the "extent" of the duty "with precision" in order to defeat the defendant's motion for summary disposition. Rather, we stated that whether the defendant's actions "were reasonable under the circumstances or constituted a breach of his duty of due care is a jury question," and we held that "under the facts pleaded in the complaint, [the defendant] owed a duty of due care to plaintiff." *Id*.

Similarly, under the facts pleaded in the instant case, plaintiffs have established that defendant owed Samantha a duty of care, and it should be left to a jury to decide whether defendant's actions and omissions breached that duty of care. This includes, for example, whether defendant, through its counselors, was negligent in directing to Samantha to remount her horse and continue on the ride, or in failing to respond appropriately notwithstanding their knowledge, if any, of Samantha's discomfort and lack of confidence in her ability to control her horse. We add the following caveat, however. As discussed above, defendant is immune from liability for Outback's conduct related to the provision of an equine, tack, and equipment. Consequently, for example, although plaintiff has asserted that defendant's counselors were negligent in failing to check Samantha's helmet, it is clear from the record that Outback assumed the responsibility of instructing the group on helmet usage and insuring that the group's helmets fit as well as possible. In addition to there being no evidence that defendant's counselors owed Samantha a duty to independently check her helmet, defendant is immune from liability on this issue under MCL 691.1665(a), as discussed above.

Further, the trial court did not address proximate cause. "To find proximate cause, it must be determined that the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." *Helmus*, 238 Mich App at 256. Here, defendant's selection of Outback for the activity is obviously a "but for" cause of Samantha's injuries (as she would not otherwise have been riding that particular horse on that particular trail on that particular day), and plaintiffs must additionally demonstrate to the trial court that the facts (assuming them to be true) that Outback's instructors lacked the certification required by defendant's safety manual, that Outback lacked proper liability insurance,[5] or that defendant's counselors were not specifically trained in horseback riding, were a proximate cause of the accident. On remand, the trial court should assess proximate cause and,

---

[5] We note that evidence concerning the presence or absence of liability insurance is generally not admissible in negligence actions, apart from certain exceptions that have not been raised in the instant case. MRE 411.

in doing so, should, ensure that evidence related to proximate cause does not effect an "end-run" around the grant of immunity provided by the EALA, but instead demonstrates that "the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." *Helmus*, 238 Mich App at 256.

## IV. OSTENSIBLE AGENCY

Finally, we agree with the trial court that plaintiffs presented no evidence that Samantha's injury was caused by her mother's perception that Outback was an agent of defendant.

Three elements must be satisfied to establish ostensible agency (agency by estoppel): "(1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence." *Chapa v St Mary's Hosp*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991). In sum, "the alleged principal must have made a representation that leads the plaintiff to reasonably believe that an agency existed and to suffer harm on account of a justifiable reliance thereon." *Little v Howard Johnson Co*, 183 Mich App 675, 683; 455 NW2d 390 (1990).

Plaintiffs claimed that they reasonably believed that an ostensible agency relationship existed between defendant and Outback based on Samantha's testimony that she did not make a distinction between their respective employees, and because the promotional and registration materials for the camp did not mention Outback or indicate that the horseback riding camp was different from any of several other camps offered by defendant for Girl Scouts. Plaintiffs further claim that their belief in the agency relationship was generated by defendant, and not by any unreasonable assumptions made by Samantha. Lastly, plaintiffs noted that the evidence did not suggest that Samantha was negligent in trusting her counselors and leaders when it came to selecting a helmet, and helping to control her horse. The trial court agreed that plaintiffs had established a genuine issue of material fact as to the three requirements of ostensible agency, but concluded that plaintiffs had not presented any evidence that Samantha's injuries resulted from an ostensible agency relationship between Outback and defendant. We agree. *Id*. Plaintiffs presented no evidence indicating, for example, that Samantha's mother would not have sent her on the trip had she known that defendant had hired a third party to provide equine instruction. Plaintiffs thus did not present a genuine issue of material fact with regard to an ostensible agency, because they failed to present any evidence that Samantha was harmed "as a result of relying on the perceived fact" that Outback was an agent of defendant. *Little v Howard Johnson Co*, 183 Mich App 675, 683; 455 NW2d 390 (1990).[6]

---

[6] Having considered the merits of plaintiff's ostensible agency argument, and having rejected it, we affirm the trial court's denial of plaintiffs' motion to amend the complaint to assert that legal theory in a separate count.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey