*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SQUARE LAKE HILLS ASSOCIATION,

        Plaintiff/Counterdefendant-Appellee,

UNPUBLISHED
March 23, 2023

v

RUSSELL GARLAND,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,

No. 360405
Oakland Circuit Court
LC No. 2018-163007-CH

and

HIGHLANDER GROUP MMC, INC., TINA
SIGLER, and CYRIL CORNAK,

        Third-Party Defendants-Appellees,

and

SANDRA DONIA,

        Third-Party Defendant.

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

Counterplaintiff and third-party plaintiff, Russell Garland, appeals as of right the trial court's order granting summary disposition in favor of counterdefendant, Square Lake Hills Association ("the association"), and third-party defendants, Highlander Group MMC, Inc. ("Highlander"), Tina Sigler, Sandra Donia,[1] and Cyril Cornak, pursuant to MCR 2.116(C)(8) and (10), in this action involving claims for breach of contract and negligence arising from damages

---

[1] Pursuant to the parties' stipulation, defendant Donia was dismissed as a party to this appeal.

to Garland's condominium unit from a water leak and the association's refusal to allow Garland to store a boat on the condominium premises. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The association is the condominium association for Square Lake Hills Condominiums in Bloomfield Hills. Garland was a co-owner of one of the units and purchased the unit on a land contract from the association. Cornak was president of the association, and Donia was an association board member. Highlander is a property management company, and Sigler is a Highlander employee who was the property manager for the association.

This case was initiated on January 9, 2018, when the association filed a complaint for injunctive relief and money damages against Garland, alleging that Garland had violated the association bylaws by parking his boat and trailer on his premises.[2] As relevant to this appeal, Garland filed a countercomplaint against the association, and a third-party complaint against Cornak, Donia, Highlander, and Sigler, asserting claims for (1) breach of contract against the association for breach of the amended and restated condominium bylaws, (2) negligence against the association and Highlander, (3) breach of contract against Cornak, Highlander, and Sigler, and (4) defamation against Highlander, Sigler, and Donia. Garland alleged that he purchased his condominium unit from the association on March 1, 2017, pursuant to a land contract. He denied being aware of or being informed of water leaking problems within his unit when he purchased it, or knowing that a prior water leak had taken place in 2015. Garland alleged that his unit experienced water leakage in December 2017, causing significant damage, and the leakage was the result of the association and Highlander's negligence in failing to address ventilation issues in the attic of the building where his unit was located. Garland further alleged that he was promised when he purchased his unit that he would be able to place his boat in a carport that he could modify into a garage, but that the association, Highlander, Sigler, and Cornak subsequently failed to honor that agreement.

In 2019, the trial court granted summary disposition in favor of the association, Highlander, Sigler, Donia, and Cornak on Garland's counterclaims and third-party claims. The court ruled that the contract and negligence claims were barred by res judicata because the association filed a separate land contract forfeiture action in district court, the land contract was forfeited, and the claims "were actually litigated in the summary proceedings and decided by the District Court on the merits." The trial court dismissed Garland's defamation claim because Garland was unable to show "that the alleged defamatory statements were made with actual malice." In a prior appeal, this Court affirmed the dismissal of Garland's defamation claim, but reversed the dismissal of Garland's claims for negligence and breach of contract because the claims were not actually litigated in the district court action and they could not have been litigated in that action because "the facts underlying Garland's claims in the circuit court action did not arise out of the same transaction or set of operative facts as the facts underlying the association's claims in the district court." *Square Lake Hills Ass'n v Garland*, unpublished per curiam opinion of the Court of

---

[2] The association's complaint against Garland was dismissed by stipulation and is not at issue in this appeal.

Appeals, issued November 12, 2020 (Docket No. 350403), pp 4-7. This Court remanded for further proceedings on the contract and negligence claims. *Id.* at 7-8.

On remand, the association, Highlander, Sigler, Donia, and Cornak again moved for summary disposition of Garland's breach-of-contract and negligence claims. The trial court granted their motion pursuant to MCR 2.116(C)(8) and (10). Garland again appeals as of right.

## II. STANDARD OF REVIEW

A trial court's decision granting summary disposition is reviewed de novo. *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). Although the trial court stated in its order that it granted summary disposition under MCR 2.116(C)(8) and (C)(10), because it was apparent from the record that the trial court considered evidence beyond the pleadings in rendering its decision, the decision is properly reviewed under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained:

> A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*., 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

In addition, whether a party owes another party a legal duty of care is a question of law, which this Court reviews de novo. *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020).

## III. BREACH OF CONTRACT

In Count I of his countercomplaint, Garland asserted a claim for breach of contract against the association, which was predicated on Garland's allegations that the association breached its obligations under the condominium bylaws by failing to repair or replace improper ventilation, insulation, or pipes after a water leak in 2015, and thereby causing the 2017 leak to Garland's unit. In Count III, of his third-party complaint, Garland asserted a claim for breach of contract against Highlander, Sigler, and Cornak for breach of an oral promise to allow Garland to convert his carport into a garage to store his boat. Garland argues that the trial court erred by dismissing both of these claims pursuant to MCR 2.116(C)(10). We disagree.

In *Bank of America NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016), our Supreme Court explained that to prevail on a claim for breach of contract, a party must satisfy the following elements:

> (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach.

To meet the first element, the existence of a valid contract, a party must establish "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*.

## A. BREACH OF CONTRACT AGAINST THE ASSOCIATION

Garland argues that the association breached its responsibilities set forth in the applicable condominium bylaws when "improper venting, insulation, and pipes were damaged and not repaired nor replaced" after the 2015 water leak in Garland's building. In *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015), this Court explained the role of condominium bylaws in the administration of a condominium project, stating:

> Pursuant to the Condominium Act, the administration of a condominium project is governed by the condominium bylaws. MCL 559.153. Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium. See MCL 559.103(9) and (10); MCL 559.108. Condominium bylaws are interpreted according to the rules governing the interpretation of a contract. See *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658, 651 NW2d 458 (2002). Accordingly, this Court begins by examining the language of the bylaws. See *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). Words are interpreted according to their plain and ordinary meaning. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause. *Id*. Ultimately, we enforce clear and unambiguous language as written. *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291, 818 NW2d 460 (2012).

The Amended and Restated Condominium Bylaws of Square Lake Hills, Article V, §§ 3 and 4 address the allocation of responsibility for damage to a condominium unit:

> **Section 3.**
>
> A. <u>Definition of Responsibility</u>
>
> If the damage is only to a part of a Unit or common elements which are the responsibility of a Co-owner to maintain and repair and/or insure, it shall be the responsibility of the Co-owners to promptly repair such damage in accordance with Subsection B, hereof. In all other cases, the responsibility for reconstruction and repair, although not necessarily the costs thereof, shall be that of the Association.
>
> B. <u>Co-owner Items</u>
>
> . . . [E]ach co-owner shall be responsible for the reconstruction and repair of the interior of the Co-Owner's Unit and all fixtures, equipment, trim and personal property, including, but not limited to, drywall, *floor coverings*, window shades, draperies, interior walls (but not any General Common Elements therein), wall

-4-

coverings, interior trim, furniture, light fixtures, and all appliances, whether freestanding or built-in. In the event damage to interior walls within a Co-Owner's unit or to pipes, wires, conduits, ducts, or other Common Elements therein is covered by insurance held by the Association, then the reconstruction or repair shall be the responsibility of the Association in accordance with Section 4 of this Article, although the responsibility for costs thereof shall be allocated in accordance with the provisions of this Section and Section 4. [Emphasis added.]

**Section 4**. Association Responsibility for Reconstruction or Repair of Common Elements.

Subject to the responsibility of the individual Co-Owners as outlined in Section 3 above, and other provisions of these Bylaws or the Amended and Restated Master Deed applicable to such situations, *the Association shall be responsible for the reconstruction and repair of the Common Elements*. Immediately after a casualty causing damage to property for which the Association has the responsibility of maintenance, repair, or reconstruction, the Association shall obtain reliable and detailed estimates of the cost to place the damaged property in a condition as good as that existing before the damage. [Emphasis added.]

Initially, there is no genuine issue of material fact regarding whether improper ventilation issues in Building 8 caused or contributed to the 2017 leak. When asked about the leak that occurred in 2015, Cornak responded, "There was no [prior] issue. . . . We had a leak due to the ice and that has been taken care of." The prior leak also affected an adjoining unit. The lessor of that unit informed the association of the leak and the association sent roofers out to investigate the leak. According to Cornak, the roofers discovered that there was a "shingle blown out," the shingle was repaired, and snow was removed from the roof. Cornak did not know if the roofing contractor who replaced the shingle examined whether the leak caused damage to any of the common elements.

Cornak testified that the December 2017 leak was caused by icicles that formed because of the weather and then melted and dripped water. The water dripped down from the ceiling all the way down to the first floor. While Building 8 was not the only building to have these icicles, it was the building that was closest to the lake and wind blowing off the lake caused the ice to melt and forced the droplets onto the glass of the windows. Cornak had workers put sodium chloride on the roof to melt the ice to stop the leak and a licensed builder and inspector was hired to replace insulation that was damaged because of the leak. Cornak testified that there was never any finding that the ventilation caused the damage to Garland's unit.

Garland argues that Cornak's testimony is not admissible under MRE 1002, which provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Garland argues that testimony from an insurance adjustor, or a concomitant report, would have been the "best evidence" of what caused both leaks. During his deposition, Cornak testified that he reviewed a report by an insurance adjustor, who opined that ventilation issues were the cause of the first leak. With regard to the second leak, however, the insurance adjustor did not provide an opinion regarding its cause, only what it would cost to fix the damage. Garland's reliance on MRE

1002 is misplaced because Cornak was not attempting in his testimony to prove the content of any writing. Rather, he was testifying regarding his understanding of the cause of both leaks on the basis of his personal knowledge derived from different sources. Even if testimony from an insurance adjustor or a concomitant report would have been competent evidence regarding the nature and cause of the December 2017 leak, Cornak's own testimony on this subject is not precluded by MRE 1002 because the testimony was not offered to prove the content of any writing.

Cornak did testify that all of the ventilation in all of the buildings was replaced after the board discovered that the leaks could have been caused by "bad insulation, not – ventilation of the air." According to Cornak, the issues with the ventilation became apparent when they were in the attic installing insulation after the second leak. Cornak explained that there was never any finding that the ventilation caused the damage to Garland's unit, but the ventilation was replaced as a preventative measure because "a lot of people had speculated that must have been the cause" of the leaks.

Although circumstantial evidence may be sufficient to establish a claim, the nonmoving party "must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) (citations and quotations omitted). In this case, although Cornak stated that unnamed individuals "speculated" that a ventilation issue could be a cause of building leaks, there was no evidence selectively identifying improper ventilation as the cause of the damage to Garland's unit, and Cornak testified that there was never any finding that ventilation was a cause of the leak to Garland's unit. Moreover, Garland did not present any contrary evidence selectively identifying any improper ventilation, insulation, or piping issues as a cause of the 2017 leak in Garland's unit. Therefore, Garland failed to establish a question of fact whether the 2017 leak resulted from a breach of the association's obligations under the condominium bylaws.

Garland relies on the testimony of Bert Stahl, who faulted Cornak and the association board for not properly addressing the issues that led to the 2015 leak and correcting them so that the 2017 leak would not occur, including his undated letter to the board in which he made the same conclusory accusations. Although Stahl's testimony and letter reflect his belief that the association failed to properly redress the 2015 leakage problem, it is not competent evidence that improper ventilation, insulation, or faulty piping that the association failed to address in compliance with the condominium bylaws gave rise to the 2017 leak in Garland's unit. Indeed, Stahl testified that, to his knowledge, the problem that caused the 2015 leak had been corrected before Garland purchased his unit, he admitted that he did not have personal knowledge that it was not handled right, and he said that he was not aware of any incorrect venting or insulation with regard to Garland's building. Therefore, Stahl's testimony does not establish a question of fact whether the association breached any obligations under the condominium bylaws.

For these reasons, the trial court did not err by dismissing Garland's breach-of-contract claim against the association under MCR 2.116(C)(10).

B. BREACH OF CONTRACT AGAINST HIGHLANDER, SIGLER, AND CORNAK

Count III of Garland's third-party complaint alleged a claim for breach of contract for breach of an oral promise to allow Garland to convert his carport into a garage to store his boat.

Garland asserts that this agreement is supported by a handwritten notation that he wrote on his rental application in which he recited his understanding that he could convert his carport into a garage for his boat. Specifically, Garland alleged that when he was negotiating his land contract, Cornak, Sigler, and Highlander were all made aware that he needed a place to store his boat, that Cornak orally promised him that he could convert his existing carport into a garage to store his boat at his own expense, and that Sigler and Highlander ratified that promise. Garland alleged that this agreement was breached when authorization to turn his carport into a garage for his boat was later withheld and he was subjected to fines for violating applicable condominium restrictions.

Article VI, § 8 of the condominium bylaws prohibits residents from storing recreational vehicles, including boats and boat trailers, on the premises of the condominium. In support of his claim that Sigler, Highlander, and Cornak agreed that he could place his boat on the condominium premises, Garland relies on his written notation on an undated application for leasing or rental in which he wrote: "Per Bert & Cyril car port & boat is ok to build & store." The written notation is not signed by either Stahl or Cornak. Moreover, the purchase agreement for Garland's unit contains an integration clause stating that "[t]his Agreement constitutes the entire agreement between buyer and seller" and that

> [a]ll discussions, correspondence, proposals, negotiations, and representations prior to the execution of [the] Agreement shall be considered merged herein and of no further effect. Buyer and Seller acknowledge that they are not relying on any other written or verbal representations by each other . . . that are not explicitly set forth in this Agreement or attached hereto.

When a contract contains an integration clause, it is conclusive evidence that the agreement is the entire agreement and parol evidence is not admissible, except "(1) to prove that the clause was fraudulent, (2) to invalidate the entire contract, or (3) if the contract is obviously incomplete on its face." *Zwicker v Lake Superior State Univ*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355128, 355377 & 357275); slip op at 14, lv pending. The parties do not dispute that the purchase agreement contains an integration clause.

Citing *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 493; 579 NW2d 411 (1998), Garland argues that parol evidence of the written notation should be admissible to show "that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding." Garland relies on the deposition testimony of Sean Dunleavy, who stated that Cornak would routinely unilaterally grant approval to condominium residents to undertake projects without seeking authorization from the association board. Even accepting Dunleavy's testimony as accurate, any such unilateral approval from Cornak in no way suggests that the purchase agreement for Garland's purchase of his unit was not a final and complete embodiment of the parties' agreement to the extent that parol evidence could be admitted. Garland's argument does not invoke any of the exceptions for allowing parol evidence to modify the terms of a written agreement that contains an integration clause. Accordingly, Garland cannot rely on any alleged oral promise to support his claim that there was a valid agreement that he could modify his carport into a garage to store his boat on the condominium premises. Therefore, the trial court did not err by dismissing this claim pursuant to MCR 2.116(C)(10).

## IV. NEGLIGENCE

Garland also argues that the trial court erred by dismissing his negligence claim against the association and Highlander. We disagree.

In Count II of his countercomplaint and third-party complaint, Garland alleged that the association and Highlander owed him a duty of care to "inspect, repair, and remediate common elements within the walls of the condominium units." Garland alleged that the association and Highlander breached that duty of care by "act[ing] in a negligent, willful, and wanton manner, thereby demonstrating a substantial lack of concern as to the source of improper venting, insulation, and HVAC systems, which were damaged and not repaired nor replaced."

To establish a prima facie claim of negligence, a party must present evidence to satisfy the following elements:

> (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. [*Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020).]

In *Powell-Murphy*, 333 Mich App at 243, this Court discussed the legal concept of a duty of care, stating:

> A duty of care may be one that the defendant owes specifically to the plaintiff, or it may be one that the defendant owes to the general public, of which the plaintiff is a member. *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), impliedly overruled on other grounds by *Fultz v Union-Commerce Assoc*, 470 Mich 460, 683 NW2d 587 (2004). While one person generally does not have an obligation to help or protect another, a duty of care may arise by way of statute, a contractual relationship, or the common law. *Hill* [*v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012)]; *Clark*, 379 Mich at 261. The common law imposes on "every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark*, 379 Mich at 261.

In this case, the alleged duty of care owed by the association and Highlander to Garland originates from the condominium bylaws. Article V, § 3A, imposes on the association "the responsibility for reconstruction and repair" for damage to common elements. In *Fultz*, 470 Mich at 465, our Supreme Court, quoting *Clark*, 379 Mich at 260-261, recognized that a duty of care may arise from a contractual relationship, with "the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract." With regard to Highlander, the third-party property management company, its duty is better characterized as arising under the common law, which imposes on every entity engaged in the prosecution of an undertaking the obligation to exercise due care to not unreasonably endanger the person or property of others. *Powell-Murphy*, 333 Mich App at 243.

However, even accepting that the association and Highlander owed Garland a duty of care, there is no genuine issue of material fact regarding whether these parties breached that duty of care. Garland alleged that Highlander and the association breached their duty of care by "act[ing] in a negligent, willful, and wanton manner, thereby demonstrating a substantial lack of concern as to the source of improper venting, insulation, and HVAC systems, which were damaged and not repaired nor replaced." As explained earlier, Cornak testified that the 2015 leak was caused by a "shingle [that was] blown out," the shingle was fixed, and snow was removed from the roof. Cornak did not know if the roofing contractor who replaced the shingle examined whether the damage to the roof caused damage to any of the common elements. Cornak explained that the 2015 leak "was not like a huge leak."

According to Cornak, the 2017 leak was caused by icicles that formed because of the weather, which then melted and caused water to drip through the windows and into the ceiling, and down to the first floor. While Building 8 was not the only building to have these icicles, it was the building closest to the lake, and wind blowing off the lake caused the ice to melt and forced the droplets onto the glass of the windows. Cornak had workers come onto the roof to put sodium chloride to melt the ice to stop the leak, and a licensed builder and inspector was hired to replace the insulation that was damaged because of the leak. Afterward, the ventilation in all of the buildings was replaced after the board discovered that the leaks could have been caused by "bad insulation, not – ventilation of the air." Cornak explained that there was never any finding that a ventilation problem caused the 2017 leak, but the ventilation was replaced as a preventative measure because "a lot of people had speculated that must have been the cause" of the leaks.

Again, Garland relies on Stahl's deposition testimony and his undated letter to the association board to support his negligence claim. In his testimony and letter, Stahl was critical of the association's handling of the 2015 leak in Building 8, and the subsequent repairs, and he expressed his belief that the problem that caused the 2015 leak was not properly addressed. As explained earlier, however, there is no evidence that Stahl had personal knowledge of what was done to correct that leak, or knowledge that anything was done incorrectly, and Stahl admitted that he was not aware of any incorrect venting or insulation in Garland's building. There is no other evidence that either the association or Highlander failed to address and rectify the 2015 leak in a competent and reasonable manner. As noted earlier, Garland did not present an affidavit or other testimony from any expert or other witness to suggest that the association and Highlander handled the 2015 leak in an unreasonable or deficient manner. Accordingly, Garland failed to establish a genuine issue of material fact whether the association or Highlander were negligent. Therefore, the trial court did not err by dismissing Garland's negligence claim under MCR 2.116(C)(10).

Finally, we reject Garland's argument that summary disposition under MCR 2.116(C)(10) was premature because discovery had not been completed. Although a motion brought under MCR 2.116(C)(10) may be premature if discovery is ongoing, *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. No. 355989, No. 355994, No. 355995, No. 356005, No. 356011, No. 356017, No. 356023, No. 359269, No. 359285); slip op at 30, lv pending, summary disposition is not precluded if there is no fair likelihood that further discovery will yield support for the nonmoving party's position, *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009).

The record reflects that the trial court issued a scheduling order on December 5, 2018, stating that discovery was to be completed by February 20, 2019. Moreover, the record reflects that the parties had ample opportunity to engage in discovery, and that numerous witnesses were deposed. Garland generally asserts that there are additional witnesses to depose and that certain documents have not been produced, but he does not identify these witnesses or documents, let alone explain how they are likely to yield support for his claims. Therefore, he has not demonstrated that summary disposition was premature.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood